## CARPENTER v. UNITED STATES.

### No. 9514.

Circuit Court of Appeals, Third Circuit.

Submitted on Briefs April 8, 1948.

Decided May 17, 1948.

Rehearing Denied June 23, 1948.

Charles Lysle Seif and Max V. Schoonmaker, both of Pittsburgh, Pa., for appellant.

Owen M. Burns, of Pittsburgh, Pa., and H. G. Morison, D. Vance Swann and Thomas E. Walsh, all of Washington, D. C., for appellee.

Before GOODRICH, McLAUGHLIN and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

The plaintiff, Edna L. Carpenter, the adoptive sister of a deceased army officer, is claiming rights under § 602(h) of the National Service Life Insurance Act of 1940, as amended. 54 Stat. 1008, Act Oct. 8, 1940, 38 U.S.C.A. § 802(h), 56 Stat. 659, Act July 11, 1942, 60 Stat. 781, Act Aug. 1, 1946, 38 U.S.C.A. § 802(h). The facts are not in dispute; the question of law is

narrow but important to those affected by its application.

The insured was born on June 7, 1913 and within four days[1] after his birth was adopted through legal proceedings by the natural parents of the plaintiff. He grew to manhood as a member of that family. While at college he lived with the plaintiff, who had previously married, and there received financial aid from her for his college education. After entering the armed service he took out a National Service Life Insurance policy in which he named his adoptive parents the beneficiaries. He died of wounds received in combat. The parents, the designated beneficiaries, both died before the payments under the policy were completed and the plaintiff claims the remainder.

The disposition of the remaining installments is our legal problem. Section 602(h)(3) of the Act provides: "Any installments certain of insurance remaining unpaid at the death of any beneficiary shall be paid in equal monthly installments * * * to

\* \* \* \* \* \*

"(D) if no widow, widower, child, or parent, to the brothers and sisters of the insured * * *." The insured died leaving no wife or child. Does the plaintiff qualify as a "sister" of the insured? If adoptive sisters are included within the term "sisters" she does; if not, the remaining installments will go untaken for want of a qualified claimant. The Veterans' Administration and the District Court[2] took the latter view. In considering the instant case it is to be noted that the question is not one of the state law of inheritance or descent and distribution.

The problem is not what or from whom an adopted person may inherit or be entitled to distribution from the estate of a decedent under state law. It is, rather, what persons are to be included as possible beneficiaries of a special type of insurance policy issued under the authority of the United States to those serving in its armed forces.

█ Congress had the power, of course, so to limit the terms and if it did our function is but to follow that limitation. But the Congress did not explicitly express its will either way in the statute. And from all we can glean from the materials and canons usually employed to ascertain such intent Congress probably did not have a conscious awareness of the problem. We must reach our conclusion as to the effect of the legislative language, therefore, by examining the policy emanating not merely from the section on which the immediate controversy is predicated but from the statute in its entirety and other statutes dealing with the rights of those related to servicemen. All of this material, furthermore, must be viewed in the light of the dominant contemporaneous opinion regarding the status of adopted persons.

Congress had to meet the problem of insurance on the lives of soldiers in the first world war. Private sources were considered inadequate because of the obvious risks attendant upon those engaged in war service. The Government, therefore, entered the insurance business. It restricted the permitted class of beneficiaries on the theory that the insurance program would not be self-sustaining and if the Government was to sustain a loss it should limit recovery to those having a "moral

---

[1] The adoptive sister at the trial stated that "he was ten hours old when he came into our home."

[2] This result is in accord with Droney v. United States, D.C.D.C.1945, 59 F. Supp. 154. In the opinion in the instant case the District Court makes a point that the Act of August 1, 1946 repealed subsection (e) of § 601 of the Act of 1940. Carpenter v. United States, D.C. W.D.Pa.1947, 72 F.Supp. 510. The latter section provided that the term "child" included an adopted child. 54 Stat. 1008, Oct. 8, 1940, 38 U.S.C.A. §

801(e). If the section was repealed it would indicate a Congressional desire to be selective as to persons who occupy, because of adoption, a relationship mentioned in the statute. We think, however, that the trial judge erred in this respect for the amendment of 1946 was for the purpose of adding stepparents to the permissible class of beneficiaries. See Sen.Rep. No. 1705, 79th Cong. 2d Sess. It did not in any way limit persons who claimed certain relationship through adoption.

right".[3] The plan set up in the first world war had some restrictions though the provisions were more liberal than those in the Act here involved. The class of permissible beneficiaries expressly included adopted brothers and sisters.[4]

It is now argued that this fact establishes the Congressional awareness of the problem and the absence of express inclusion of brothers and sisters by adoption in the current Act indicates a purposeful omission. This position has some force until the factual situation surrounding the passage of this Act is known. It was presented while the Revenue Act of 1940 was being considered.[5] That Revenue Act was very controversial because it contained the excess profits tax provisions and other contested innovations in the tax law. The veteran's insurance problem was referred to the same Committee. It was reported back as a part of the Revenue Act of 1940. The Conference Committee report accompanying it was a thick one but out of its 64 pages less than one page was devoted to the insurance Act, the rest being used to explain the complicated provisions of the pending tax law.[6] The Committee handling such legislation, furthermore, was not the one to which other problems concerning benefits and insurance for members of the armed forces were referred.[7] For these reasons, the provisions of the two statutes cannot fairly be compared to demonstrate that deviations in text were purposeful, and therefore have interpretative significance.

The 1942 amendment to the 1940 statute was also referred to the Ways and Means Committee and the Committee on Finance.[8] It is interesting to note, however, that the definitions contained in § 601 of the 1940 Act were expanded so that an adopted person was given the same rights that a natural relative of the insured in a particular relationship had.[9] No mention was made of brothers and sisters in the definition section of the original Act, nor were they defined in the amendment. But the 1942 amendment does indicate, we think, a general policy to treat adoptive persons the same as relatives by blood.

In another piece of vital legislation on the rights of dependents of servicemen, adoptive persons were treated on an equal footing with those related by blood. Whenever sisters and brothers were included in the benefits, adoptive persons were also included. Thus, in the legislation providing for the support of those dependent on enlisted personnel the "terms 'brother' and 'sister' include brothers and sisters of the half blood as well as those of the whole blood, * * * and brothers and sisters through adoption."[10] We do not think that the Congress would be

---

[3] See Hearings before Committee on World War Veterans' Legislation, H.R. 4965, 79th Cong. 2d Sess. (1946).

[4] 43 Stat. 607, Act June 7, 1924, 38 U.S.C.A. § 424.

[5] 88 Cong.Rec. 4324 (1942).

[6] See H.R.Rep. No. 3002, 76th Cong. 3d Sess. (1940). The Committee reports in the House and Senate respectively accompanying H.R. 10413, the Revenue bill of which the National Service Life Insurance became a part, does not contain any reference to the National Service Life Insurance Act. See H.R.Rep. No. 2894, 76th Cong. 3d Sess. (1940); Sen.Rep. No. 2114, 76th Cong. 3d. Sess. (1940). The first reference to the National Service Life Insurance Act is in the Conference Report which as pointed out above devotes less than one full page to the matter.

[7] See Hearings before Committee on World War Veterans' Legislation on H.

R. 4965, 79th Cong. 2d Sess. (1946) p. 11.

[8] 88 Cong.Rec. 4324 (1942).

[9] The only part of the original Act which mentioned relationships through adoption was § 601(e). It simply provided: "The term 'child' includes an adopted child." The 1942 amendment added § 601(f) which provided: "The terms 'parent', 'father', and 'mother' include a father, mother, father through adoption, mother through adoption, and persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year." 56 Stat. 659, Act July 11, 1942, 38 U.S.C.A. § 801(f). The 1946 amendment simply added: "and a stepparent, if designated as beneficiary by the insured." 60 Stat. 781, 38 U.S. C.A. § 801(f).

[10] 37 U.S.C.A. § 220.

likely to permit a sister by adoption to receive an allotment of his monthly pay by a service man but not permit her to share in his life insurance policy.

We think, furthermore, that the policies reflected in the Congressional enactments are in accord with the dominant contemporaneous legal feeling towards adoption. Since adoption was not known at common law the statutory trends are our guides. An examination of the statutes of the three states[11] which make up this Circuit indicate a tendency to transplant the adopted person into the family of the adopter, the person thus bearing the same legal relationships to all the kindred of the adopting person as does the natural relative. In the Pennsylvania statutory scheme we find the idea expressed throughout. The adopted child can inherit in any case where a natural one could[12] and, what is more pertinent for our purposes, the tendency

in interpreting instruments is to place the adopted person on an equal footing with natural persons.[13] The provisions in the New Jersey statute[14] as well as the Delaware statutes[15] are of similar purport.

These instances of the legislative recognition of the position of the adopted child reflect, we think, the current opinion on the subject by those in the field of family relations who have given the matter the most careful and thoughtful consideration.[16] They include sociologists of note. Even more important in this field, we think, is the opinion of those engaged in the family relations side of social work, whose contact with the problems is a day to day experience. We are convinced that the current of modern thought on the matter is wholly in the direction of placing the adopted child in the family of his adoption as completely as though the relationship from the beginning had been by blood. We

[11] We pick these three only because they are nearest to us. Other states have similar provisions. See, e. g. In re Winchester's Estate, 1903, 140 Cal. 468, 74 P. 10; McCune v. Oldham, 1932, 213 Iowa 1221, 240 N.W. 678; In re Riemann's Estate, 1927, 124 Kan. 539, 262 P. 16; St. Louis Union Trust Co. v. Hill, 1934, 336 Mo. 17, 76 S.W.2d 685 (Mo.Stat.Ann. § 14079, Mo.R.S.A. § 9614). There are, of course jurisdictions to the contrary. In re Hodges' Will, 1945, 294 N.Y. 58, 60 N.E.2d 510; Grimes v. Grimes, 1935, 207 N.C. 778, 178 S.E. 573, see Notes 38 A.L.R. 8 (1925), 120 A.L.R. 837 (1939). But the recent trend is towards the positions herein suggested. See, e. g. Mo. R.S.A. § 9614; Pa. Wills Act of 1947, Act No. 38, April 24, 1947, §§ 14(6), 7(4), 20 P.S.Pa. §§ 180.14(6), 180.7(4).

[12] 20 Pa.Stat.Ann. (Purdon's) § 102; see Brooks and Brooks, Adventuring in Adoption p. 137 (1939).

[13] 20 Pa.Stat.Ann. (Purdon) § 227 (Devise or bequest to children includes adopted children); 20 Pa.Stat.Ann. (Purdon) Annot. § 228 (Devise or bequest to children of another). See Report of the Joint State Government Commission of the General Assembly of Pennsylvania (Pa. Wills Act of 1947, Act No. 38, April 24, 1947) p. 52; cf. Price v. Pittston Co., 1937, 31 Pa.Dist. & Co. R. 77 in which the court permitted an adoptive parent to recover under the Workmen's Compensation Act, 77 P.

S. § 1 et seq., although that Act neglects to mention adoptive parents.

[14] N.J.S.A. 9:3–9.

[15] Del.Code 1935, §§ 3847, 3551, amended by 41 Del.Laws c. 187; In Rhoads v. McFarland, Del.Ch.1945, 40 A.2d 542, 544, the court stated: "It is self-evident that use of the expression 'next of kin' postulates the existence of a hierarchy of classes of kin. Where, as here, it is used in a context involving a Delaware decedent and Delaware property, the expression can hardly be understood to refer to any other rule than the orders of priority of classes of a decedent's relatives established by our intestacy laws. Hence, 'next of kin' indicates the class 'children' (natural born), in preference to the class 'sisters.' Given the direction of the adoption statute that an adopted child shall be 'to all intents and purposes, the child and heir at law of' the adoptive parent, the conclusion seems inescapable that for the purpose of determining the 'next of kin' of an adoptive parent, the adopted child must be treated as a natural born child, and therefore within the meaning of the expression."

[16] See Nimis, The Illinois Adoption Law and Its Administration, Social Service Monograph No. 2 (Pub. in connection with the Social Service Review). For a study on how the adopted person and the adoptive family regard their relationship, see Parker, "Fit and Proper" pp. 120-124 (1927).

give a few instances expressing this point of view in the margin.[17]

Because the language of the Congress is not explicitly to the contrary and because the legislative history does not indicate a contrary intent, we think that the construction to be given the statute should be that of the contemporaneous meaning of the effect of adoption. The application of that meaning would entitle the plaintiff to be considered in every respect as the "sister" of the deceased Captain Lobach.

The judgment of the District Court will be reversed and the case remanded with directions to enter a verdict for the plaintiff.

---

[17] "Adoption is a social type of birth the moment the final decree is granted. Bound by legal ties after adequate examinations and investigations have been made, the adopted child's position in the family is rightly as irrevocable as though he had been decreed through biological birth for that particular family." See Brooks and Brooks, Adventuring in Adoption pp. 6, 16, 132, 135 (1939). "* * * This is in line with the accepted theory that adoption is complete substitution for the natural family in every respect except the biological. The social scientist affirms that the essence of parenthood is sociological rather than mere physiological." See Brooks and Brooks, supra p. 137; The ABC of Foster-Family Care for Children (U.S. Dept. of Labor, Bureau Pub. No. 216) p. 34 (1933); Adoption Laws in the United States (U.S.Dept. of Labor, Bureau Pub. No. 148) p. 21 (1925).