## WOODWARD v. UNITED STATES et al.
### No. 14122.

United States Court of Appeals, Eighth Circuit.

Nov. 15, 1950.

Writ of Certiorari Granted Feb. 26, 1951.

Louren G. Davidson, Springfield, Mo., and Claude T. Wood, Richland, Mo., for appellant.

F. B. Freeman, Springfield, Mo. (Neale, Newman, Neale, Freeman & Wampler and Ransom A. Ellis, Jr., all of Springfield, Mo., on the brief), for appellee LeRoy Haizlip.

Sam M. Wear, U. S. Atty., David A. Thompson, Asst. U. S. Atty., Kansas City, Mo., H. G. Morison, Asst. Atty. Gen., and D. Vance Swann and Thomas E. Walsh, Attys., Department of Justice, Washington, D. C., filed brief for appellee United States of America.

Before SANBORN and THOMAS, Circuit Judges, and DEWEY, District Judge.

SANBORN, Circuit Judge.

This action, which was brought by Ernest R. Woodward, the appellant, to recover the proceeds of a policy of National Service Life Insurance issued by the United States to Evelyn C. Haizlip, a service woman, has been tried twice. The first trial resulted in a verdict and judgment for LeRoy Haizlip, the husband of the insured, who was brought into the case as an adverse claimant. The plaintiff (appellant) appealed from the judgment, and this Court reversed and remanded the case for a new trial, upon the sole ground that the trial court had admitted incompetent and prejudicial evidence. Woodward v. United States, 8 Cir., 167 F.2d 774. The second trial also resulted in a verdict and judgment for LeRoy Haizlip, and the plaintiff has again appealed.

The insured died February 17, 1945. The original beneficiary named in the policy was her husband, LeRoy Haizlip. Shortly before her death, the insured changed the beneficiary to the plaintiff, describing him as her brother. He was the son of James B. Woodward by a wife who was later divorced. James B. Woodward on January 31, 1927, married the insured's mother, Lela Morris, when the insured was about five years old. Lela Morris was an unmarried woman when the insured was born on May 2, 1922, at the Florence Crittenton Home, a maternity home for unwed mothers, in Kansas City, Missouri. Lela Morris was a native of Saltillo, Tennessee, who in 1920 and 1921 had worked as a domestic in the Bennett home in Savannah, Tennessee. There were several boys in the Bennett family, one of whom was Charlie Bennett. When Lela Morris left the Bennett home she was pregnant.

After the marriage of the mother of the insured to James B. Woodward, and on September 12, 1927, he adopted the insured. Her name was then changed from Morris to Woodward. Her mother died in 1936. Her father by adoption died on June 14, 1945, at the age of 80 or 81.

Upon the first trial of the case, the District Court ruled that if James B. Woodward was the natural father of the insured as well as her father by adoption, the plaintiff as her brother by the half blood was at the time of her death a "brother" of the insured within the meaning of § 602(g) of the National Service Life Insurance Act of 1940, 54 Stat. 1008, 1010, as amended July 11, 1942, 56 Stat. 657, 659, 38 U.S.C.A. § 802 (g), specifying those who were permitted to become beneficiaries in policies of National Service Life Insurance, and was entitled to the proceeds of the policy. The District Court also ruled that if the plaintiff was merely a brother of the insured through adoption he was not a "brother" within the meaning of § 602(g) and was not eligible to be a beneficiary.

The plaintiff claimed that he was a brother of the insured not only through adoption

but also by the half blood; that a brother through adoption was within the class of permitted beneficiaries; and that, under Missouri law, a brother through adoption is a "brother" within the meaning of the applicable federal statute.

LeRoy Haizlip denied that there was any blood relationship between the plaintiff and the insured. Both Haizlip and the United States asserted that a brother through adoption could not be a beneficiary under § 602(g) of the Act, and that Missouri law had no bearing upon the question of the meaning of the word "brother" as used in the federal act.

Upon the first trial, the evidence on behalf of the plaintiff tended to prove that his father, James B. Woodward, was or might have been the natural father of the insured. The evidence on behalf of LeRoy Haizlip tended to prove that James B. Woodward was not the natural father of the insured, but only her father by adoption, and that her natural father was Charlie Bennett, of Savannah, Tennessee. Under the instructions of the District Court, the jury's verdict in favor of LeRoy Haizlip was a finding that James B. Woodward was not the natural father of the insured and that the plaintiff was not a brother of the insured by the half blood.

Upon the appeal from the judgment entered after the first trial, the plaintiff contended that the District Court had erred (1) in ruling that a brother through adoption was not within the class of beneficiaries permitted by the statute, (2) in ruling that the meaning of the word "brother" was a question of federal, and not of state, law, (3) in refusing to admit evidence of a claimed family resemblance between the insured and James B. Woodward, (4) in admitting a certified copy of the insured's birth certificate reciting that Charlie Bennett was her father, and (5) in instructing the jury.

This Court, on review of the proceedings at the first trial, sustained all of the rulings of the District Court, except its admission in evidence of the challenged birth certificate as proof of the insured's paternity.

On the retrial of the case, the District Court adhered to rulings made at the first trial which had been sustained by this Court. The fact issue submitted to the jury was the same as on the first trial. The jury again found, in effect, that the plaintiff was not a brother of the insured by the half blood, and returned a verdict for LeRoy Haizlip, upon which judgment was entered. This appeal followed.

The plaintiff contends: (1) that a brother through adoption is a "brother" within the meaning of the applicable statute, and that this Court should so hold in conformity with the decision of the Circuit Court of Appeals of the Third Circuit in Carpenter v. United States, 168 F.2d 369; (2) that Missouri law should be applied in determining the meaning of the word "brother" as used in the applicable federal statute; (3) that evidence of facial and physical resemblance between the insured and James B. Woodward was improperly rejected; (4) that a motion to require LeRoy Haizlip to give security for costs should not have been denied; (5) that the District Court erred in rulings on evidence; and (6) that the court's instructions to the jury were prejudicially erroneous.

It is safe to say that when this Court reverses a judgment and remands a case for a new trial, the District Court commits no error in retrying the case in conformity with the opinion of this Court, unless, in the meantime, the opinion has been overruled or modified by controlling authority. We understand, of course, that this Court has the power to overrule its former decision in the same case after a retrial, if convinced of error. With due respect to the opinion of the Circuit Court of Appeals of the Third Circuit in Carpenter v. United States, supra, 168 F.2d 369, we adhere to our former ruling that a brother through adoption was not within the class of permitted beneficiaries under the applicable statute. Certainly the District Court did not err in following that ruling.

The former opinion of this Court in this case also settled the question of the applicability of Missouri law in determining the meaning of the word "brother" as used in the federal statute, and the question of the admissibility of evidence of a resemblance

between the insured and James B. Woodward.

The refusal of the District Court to require LeRoy Haizlip to give security for costs, even if an abuse of discretion, could not affect the validity of the judgment appealed from, and requires no discussion.

■ The contention that the records of the Florence Crittenton Home relative to Lela Morris, made at the time she entered the home, reciting that her pregnancy was due to "Charlie Bennett," for whose mother she had been doing housework at Savannah, Tennessee, were inadmissible as evidence of the insured's paternity, is without merit. The records were shown to have been kept in the regular course of the business of the Home, were such records as any well conducted institution of that kind would normally keep, and bore all the earmarks of trustworthiness. The records were admissible under § 1732, Title 28 U.S.C.A. See Harper v. United States, 8 Cir., 143 F.2d 795, 805–806, and compare Hoffman v. Palmer, 2 Cir., 129 F.2d 976, 980–982.

■ We are also of the opinion that the District Court did not err in admitting in evidence the records of the Juvenile Court at Kansas City, Missouri, relative to the adoption of the insured by James B. Woodward. These records indicated that he considered her his stepchild, that she was illegitimate, but that he was not aware of it. There is apparently no statute of Missouri prohibiting the keeping of such records, nor prohibiting their use as evidence.

■ The fact that the records of which the plaintiff complains were prejudicial to him and virtually disproved his claim that there was a blood relationship between him and the insured, did not make them inadmissible. After all, the purpose of rules of evidence is to get at the truth; not to suppress it. Compare, London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 332. We think that none of the court's rulings on evidence, which are complained of, was erroneous.

■ There was nothing improper in the charge of the court. While the judge summarized and commented upon the evidence, as he had a right to do, his comments fell far short of advocacy and left the jurors entirely free to perform their functions as judges of the facts, the credibility of the witnesses, and the weight of evidence. Compare, Buchanan v. United States, 8 Cir., 15 F.2d 496, 497–498 and cases cited.

The judgment appealed from is affirmed.