## UNITED STATES v. HENNING et al.

### No. 4571.

United States Court of Appeals
First Circuit.

Sept. 4, 1951.

Russell Chapin, Atty., Department of Justice, Washington, D. C. (George F. Garrity, U. S. Atty. and Philip T. Jones, Asst. U. S. Atty. both of Boston, Mass., and Holmes Baldridge, Asst. Atty. Gen. and D. Vance Swann, Atty., Department of Justice, of Washington, D. C., on the brief), for appellant.

Frederick Breen, Boston, Mass., for Clara Belle Henning.

Richard H. Lee, Boston, Mass. (Lloyd, Lee & Sherman, Boston Mass., on the brief), for Joseph S. Kennedy as Adm'r d. b. n. Estate of Otto F. Henning, and as Adm'r Estate of Bessie M. Henning.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This appeal presents questions with respect to the disposition of the proceeds of a policy of National Service Life Insurance. There is no dispute as to the facts.

The insured serviceman, Eugene C. Henning, was born to Otto F. and Clara Belle Henning on September 20, 1912, in Boston, Massachusetts. Otto and Clara separated almost immediately after Eugene's birth, and Eugene went with his mother to live in his maternal grandmother's home where he was supported entirely by the maternal side of his family. This arrangement continued until about 1920 when the insured went to live in the home of his paternal grandmother. While there the mother made some, but not great, financial contribution toward his support. Then about 1922 the insured moved to the home of a cousin on his father's side of the family. In 1923, Otto and Clara were divorced on Otto's petition, custody of Eugene being awarded to Otto, and in September 1927 Otto married one Bessie M. Gass. Thereupon the insured, who was then about fifteen years of age, went to live with his father and stepmother.

While he was living in his father's newly established home his stepmother treated him with all the affection, and gave him all the attention, that a natural mother would

ordinarily bestow upon a son. She cared for his personal effects, did his laundry, and furnished him meals which the court below found "were no doubt paid for largely by the father." While Bessie did not call the insured her "son", or demonstrate her affection for him effusively, their relationship was reasonably close and no hostility ever existed between them.

About 1930 the insured moved to a boarding house, not because of any family friction, but because he wished to live with the son of his employer, who was a close friend and fellow worker. After about two years in the boarding house, however, both he and his friend went to live with Otto and Bessie. The pleasant relationship which had characterized the insured's earlier occupancy of his father's new home continued throughout this second occupancy.

In January 1940 the insured married, and thereafter he lived with his wife until November 11, 1942, when he entered upon active duty in the United States Navy. After he entered the navy he corresponded with his natural mother and sent her presents and photographs of himself.

On December 1, 1942, the $10,000 policy of National Service Life Insurance involved herein issued on the life of the insured. In this policy the insured's wife was named as the beneficiary and his father as the contingent beneficiary. In July, 1944, however, the insured, by executing the appropriate form, named his father as sole beneficiary of the full amount of insurance, and in October of that year his marriage was annulled. The insured's former wife makes no claim to the proceeds of this insurance policy and is not a party to this action.

The insured died on active service on July 4, 1945, and his father, apparently without filing any claim to the proceeds of the policy, died on December 8 of the same year. Clara Belle filed her claim with the Veterans' Administration February 4, 1946, alleging that she was the mother of the insured, and ten days later, Bessie, the stepmother, also filed a claim based on the contention that she had last stood in loco parentis to the insured. The Veterans' Administration determined that Clara Belle, as the natural mother, had last stood in loco parentis to the insured and allowed her claim, disallowing that of Bessie. The Board of Veterans' Appeals, however, reversed. It found that the stepmother, Bessie, had last stood in loco parentis to the insured and allowed her claim, and this, it is agreed, constituted a final administrative disallowance of Clara Belle's claim.

Clara Belle thereupon brought the instant action wherein Bessie was impleaded as a defendant. Bessie, however, died on June 30, 1949, before the case came on for trial in the court below, thus leaving the natural mother the sole survivor of those who had ever stood in any parental relationship to the insured.

On these facts the court below, dividing the face amount of the policy into one hundred twenty equal installments of $83.33⅓ each, determined that the installments which fell due from the time the policy matured to the date the named beneficiary, the father, died, were payable to his estate; that the installments which fell due from the date of the father's death to the date the stepmother died were payable one half to the natural mother and one half to the stepmother's estate, since during that time both women bore the parental relationship requisite under the statute to qualify as beneficiaries, and that subsequent installments were payable to Clara Belle, the natural mother, should she survive to receive them. The present appeal by the United States is from the judgment entered in conformity with these conclusions.

The Government makes three principal contentions. It says that the statute applicable on the date the insurance matured clearly forbad the payment of any installment of National Service Life Insurance to the legal representative of a deceased beneficiary; that two women, one the natural mother and the other the stepmother, cannot, under the applicable statutory provisions, both simultaneously bear the parental relationship to the insured requisite for qualification as a beneficiary; and that the court below erred, first in directing payment in one hundred twenty equal installments

without regard to the attained age of the beneficiary and without election by the beneficiary as to the method of payment, and second in directing the payment of monthly benefits in the amount of $83.33⅓ each.

The major issue in this case is whether the District Court erred in ordering that, under the National Service Life Insurance Act of 1940, 54 Stat. 1008, as amended in 1942, 56 Stat. 657, 38 U.S.C.A. § 801 et seq., payments be made to the administrators of the estates of deceased beneficiaries. The Government argues that it did, and in support of its position points to § 602(i) and (j) of the 1940 Act, which were not amended in 1942 wherein it is provided in material part as follows:

"(i) * * * The right of any beneficiary to payment of any installment shall be conditioned upon his or her being alive to receive such payments. No person shall have a vested right to any installment or installments of any such insurance and any installments not paid to a beneficiary during such beneficiary's lifetime shall be paid to the beneficiary or beneficiaries within the permitted class next entitled to priority * * *.

"(j) No installments of such insurance shall be paid to the heirs or legal representatives as such of * * * any beneficiary, and in the event that no person within the permitted class survives to receive the insurance or any part thereof no payment of the unpaid installments shall be made".

▮ The Government's position is that the above language clearly and unequivocally provides that a beneficiary must be alive to receive the payment of any installment, and that if he or she should die before receiving any installment, even though it was due and owing but for any reason, even the Government's neglect, not paid, then payment must be made to the beneficiary or beneficiaries in the class next entitled, or, in default of such, no payment at all may be made. The District Court char-

acterized the result of this construction of the Act as "monstrous", and, relying upon Baumet v. United States, 2 Cir., 1949, 177 F.2d 806, certiorari denied 339 U.S. 923, 70 S.Ct. 611, 94 L.Ed. 1346, *motion for leave to file petition for rehearing denied,* 339 U.S. 973, 70 S.Ct. 984, 94 L.Ed. 1379, held that installments which fell due but were not paid during a beneficiary's lifetime were payable to the legal representative of the beneficiary, and that the statutory language only required that installments which accrued after a beneficiary's death were payable to the next entitled beneficiary. Although there are several District Court cases wherein the opposite view prevailed,[1] we agree with the court below.

It is certainly true that the literal wording of the statute goes a long way toward sustaining the Government's contention. On the other hand, it requires little imagination to visualize some rather amazing consequences of the interpretation of the statute urged by the Government. For example, should the officer of the Veterans' Administration charged with the payment of benefits on some pretext or other withhold payments until a beneficiary died, he could then pay the full proceeds of the insurance to the beneficiary next in priority and thus give the latter benefits to which the deceased beneficiary was justly entitled. Or the paying officer could defeat the payment of any benefits whatever simply by withholding payment of any installment until all beneficiaries died. Moreover, as a further and more probable example, as the Court of Appeals pointed out in the Baumet case, a second priority beneficiary, however specious his claim, could sue upon it, and, if fortunate enough to be able to make his suit outlive the first priority beneficiary, who might be aged or ill, take all to the exclusion of the person or persons in the class for whom Congress had expressed the greater concern. To say the least it seems unlikely that Congress intended to pass legislation, particularly remedial legislation such as the Act under considera-

1. Baumet v. United States, D.C.S.D.N.Y., 1948, 81 F.Supp. 1012; Carpenter v. United States, D.C.W.D.Pa., 1947, 72 F. Supp. 510; reversed on other grounds, 3

Cir., 1948, 168 F.2d 369, 3 A.L.R.2d 841; Washburn v. United States, D.C.W.D. Mo., 1945, 63 F.Supp. 244, 228.

tion, capable of producing such unjust, startling and capricious results.

Nevertheless it is true, as the Government suggests, that in the War Risk Insurance Act of 1924, 43 Stat. 614, 38 U.S. C.A. § 451, Congress specifically provided for the payment of accrued installments to the estates of deceased beneficiaries, and that by amendment of the 1940 Act in 1946, 60 Stat. 786, 38 U.S.C.A. § 802(u), it made a like specific provision with respect to National Service Life Insurance maturing on or after August 1, 1946, over a year after the insured's death. From this it can be argued that by the omission of a similar specific provision of the Act of 1940 as it stood amended in 1942, Congress must have intended to deny any payment of installments, even those which had accrued during a beneficiary's lifetime, to the estate of a beneficiary who had died.

However, in view of the hasty consideration given by Congress to the 1940 Act and its 1942 amendment (see Carpenter v. United States, 3 Cir., 1948, 168 F.2d 369), the unfortunate consequences resulting from the literal interpretation of the statutory language, and the lack of any legislative history to indicate the contrary, we think the deviation in 1940 Act from the text of the earlier Act of 1924 was not purposeful and therefore is not significant. Like considerations also lead us to the conclusion that the 1946 amendment referred to above was intended only to clarify, not to alter, the original Act. And we do not think too much significance should be attached to the fact that Congress made its 1946 amendment applicable only to insurance maturing on or after August 1, 1946, for Congress at that time was not merely amending the Act in the particular respect under consideration but was providing a wholly new system for the payment of benefits, and hence it can hardly be assumed that its attention was focused on the precise narrow question of relatively minor importance with which we are here concerned.

■ The foregoing considerations, plus consideration of the remedial nature of the statute, lead us to construe the Act liberally in the direction of the payment of benefits rather than the making of profits for the Government by escheat, and hence we agree with the interpretation of the statute by the court below and by the Court of Appeals for the Second Circuit in the Baumet case, supra.

This brings us to the question whether the natural mother and the stepmother qualify under the statute as simultaneous beneficiaries with the result that the installments which accrued while both lived are payable to the natural mother and the stepmother's estate, share and share alike.

Section 601 of the 1940 Act as it stood after amendment in 1942, 56 Stat. 659 defined the terms "parent", "father", and "mother" to "include a father, mother, father through adoption, mother through adoption, persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year". Moreover, at the same time § 602(g) of the original Act was amended by deletion of the specific provision that for the purpose of designation of beneficiaries the term parent included those persons who had stood in loco parentis to the insured, and the same amendment also altered § 602(h) (3) (C) to read:

"(h) Such insurance shall be payable in the following manner:

\* \* \* \* \* \*

"(3) Any installments certain of insurance remaining \* \* \* at the death of any beneficiary shall be paid in equal monthly installments in an amount equal to the monthly installments paid to the first beneficiary, to the person or persons then in being within the classes hereinafter specified and in the order named, unless designated by the insured in a different order—

\* \* \* \* \* \*

"(C) if no widow, widower, or child, to the parent or parents of the insured who last bore that relationship, if living, in equal shares;"

\* \* \* \* \* \*

The question is purely one of statutory interpretation. And the statutory language quoted above which we are called upon to interpret is not by any means as clear as it might be.

The District Court took the view that Clara Belle Henning as the natural mother was the insured's mother " 'first', 'last' and all the time" for statutory as well as for other purposes. But it found that the stepmother, Bessie, had stood in loco parentis to Eugene for the period of time required by the statute to qualify as a beneficiary. Thus it concluded that three persons had borne a parental relationship to Eugene; the father, Otto, on the basis of both blood and conduct, the natural mother, Clara, on the basis primarily of blood but to some extent on conduct, and the stepmother, Bessie, solely on the basis of conduct. Then, finding no difficulty in the concept of "a person being in loco parentis, even though a natural parent or two natural parents were alive", it concluded that after the death of Otto, the named beneficiary and father, both Clara and Bessie bore the parental status required to qualify as beneficiaries under the statute. Hence it ruled that both were entitled to share equally in the installments which fell due from the time Otto died to the time of Bessie's death.

The Court of Appeals for the Second Circuit, however, in a second appeal in the Baumet case, Baumet v. United States, 2 Cir., 191 F.2d 194 explicitly disagreed with the court below. It said that an insured could have "but one maternal parent and one paternal parent", and since the statute recognized persons in loco parentis as parents, and the insured's foster parents last bore that relationship to the insured, the foster father was the paternal parent for the purpose of the statute and the appellant as the natural father "cannot satisfy the statutory requirement."

The facts in the Baumet case, however, differ from those in ours in that in Baumet the insured and his natural father were estranged, and perhaps the latter had wholly abandoned all parental responsibility and control; whereas in ours there is no finding or evidence of any estrangement, to say nothing of abandonment, or even any lack of parental feeling, between Eugene and his mother, Clara Belle. Furthermore the holding of the Baumet case leaves unanswered, and it would seem unanswer-

able, cases in which a maternal parent and another person of the same sex had combined resources to establish, maintain and support a home for a child who later became an insured. For example, suppose the widowed mother of an infant and the mother's sister, (the child's aunt,) live together, each contributing substantially equally to the support of the home and the feeding and clothing of the child and each sharing in the child's upbringing. Both would then be in loco parentis to the child and it would seem hardly within the contemplation of Congress that one should take all the insurance proceeds to the exclusion of the other.

■ Certainly Congress intended by the statutory language to include in the class of parents those who, regardless of blood, had last stood in loco parentis to an insured for at least a year. But we do not think that Congress intended by so doing completely to exclude a natural parent from the class of beneficiaries in every case wherein some other person of the same sex had stood in loco parentis to an insured for the requisite period. For instance, it seems to us hardly likely that Congress would wish to eliminate as a beneficiary a natural parent, who, perhaps with all parental good will, happened for ill health, financial disaster, or some other comparable reason to be incapable of caring for his or her child, and instead to favor some stranger to the blood who might by force of temporary circumstances have last stood for a year in loco parentis to an insured.

■ On the whole, therefore, and with all deference to the Court of Appeals for the Second Circuit, we incline to the view of the District Court. In doing so, however, we are not to be understood as holding that a natural parent, by that fact alone necessarily remains for life a statutory beneficiary under all circumstances. It may be that a natural parent who has voluntarily for some selfish reason abandoned all parental responsibility cannot be heard to assert his or her parenthood only for the purpose of collecting insurance benefits. See United States v. Kwasniewski, D.C.E.D.Mich., 1950, 91 F.Supp. 847,

853. This question, however, is not now before us and we therefore pass it until it is presented.

We come now to the question whether the court below fell into error in ordering payments in one hundred twenty equal installments in the absence of an election by the first beneficiary, Otto, to be paid in that manner.

The statute as it stood on the date of the insured's death did not give the first beneficiary any election as to mode of payment. It provided in (1) and (2) of § 602(h) of the 1940 Act, which were not amended in 1942, that if the first beneficiary were under thirty years of age on the date of maturity the insurance was payable in two hundred and forty equal monthly installments and that if the beneficiary were thirty or more years of age on the pivotal date, the payment was to be made "in equal monthly installments for one hundred and twenty months certain, with such payments continuing during the remaining lifetime of such beneficiary". It being clear from the available data that the first beneficiary, the father Otto, was over thirty when his son died, it is evident that under the foregoing statutory provision the policy was payable without any election on Otto's part in equal monthly installments for as long as he lived with payment of one hundred and twenty such installments certain whether he died in the meantime or not.

But the above statutory provisions were amended in 1946, 60 Stat. 783 by providing for the permissive inclusion by the administrator in policies maturing prior to the effective date of the amendment of provisions giving the first beneficiary the power to elect between installment payments as above and a refund life income, also payable in monthly installments.

 Whether or not the Administrator ever did include an election provision in Eugene's policy does not appear from the record. But however this may be, the election, if it was given, was given to the first beneficiary, who we have held to have been Otto, and it is clear that he could not have exercised it for he died without making any claim under the policy. Therefore as we see it, the policy in suit was payable in equal monthly installments during Otto's lifetime with one hundred and twenty such installments certain.

The question of the amount of monthly installments remains.

 The court below arrived at their amount simply by dividing the face amount of the policy into one hundred and twenty equal parts. This was error. The amount of the monthly installments must be arrived at as a result of actuarial computations based on the life expectancy of the first beneficiary, as fully explained in United States v. Zazove, 1948, 334 U.S. 602, 68 S.Ct. 1284, 92 L.Ed. 1601. The case must, therefore, be remanded for the purpose of making this computation.

The judgment of the District Court is reversed and the case is remanded to that Court for further proceedings consistent with this opinion.