METROPOLITAN LIFE INSURANCE
COMPANY

v.

Bessie THOMPSON

and

Edward Thompson, a minor, by his mother and natural guardian, Helen
Mae Thompson.

Civ. A. No. 38397.

United States District Court
E. D. Pennsylvania.

Feb. 1, 1966.

Owen B. Rhoads, Philadelphia, Pa., for plaintiff.

Harry A. Cantor and Jerome L. Markovitz, Philadelphia, Pa., for plaintiff in interpleader.

Wexler, Mulder & Weisman, by Raymond L. Shapiro, Philadelphia, Pa., for defendant in interpleader.

JOSEPH S. LORD, III, District Judge.

This case involves the distribution of the proceeds of life insurance policy No. 17000G issued to the United States Civil Service Commission by Metropolitan Life Insurance Company, covering Cornelius R. Thompson, deceased. The proceeds have been claimed by Bessie Thompson,

decedent's mother, and also by Edward Thompson, a minor, by his mother and natural guardian, Helen Mae Thompson. Metropolitan filed a complaint for interpleader (28 U.S.C.A. § 1335), after which Bessie Thompson (hereafter called plaintiff) filed a statement of claim and Edward Thompson, through his mother (hereafter called defendant), filed an answer. Before me are the motions of Bessie to dismiss Edward's claim and for judgment on the pleadings, and Edward's motion for summary judgment.

The facts are not in dispute. Bessie Thompson is the decedent's mother. Edward Thompson is the issue of Cornelius R. Thompson and Helen Mae Thompson, who though living as husband and wife were never lawfully married under the laws of the State of New York, where they were at all times domiciled up to and including the date of Cornelius' death. It is conceded that under the laws of New York, Edward is illegitimate. Cornelius designated no beneficiary under the policy.

The Federal Employees' Group Life Insurance Act (5 U.S.C.A. § 2093), pursuant to which the policy was issued, establishes the following order of distribution:

"First, to the beneficiary or beneficiaries as the employee may have designated by a writing received in the employing office prior to death;

"Second, if there be no such beneficiary, to the widow or widower of such employee;

"Third, if none of the above, to the child or children of such employee and descendants of deceased children by representation;

"Fourth, if none of the above, to the parents of such employee or the survivor of them;

"Fifth, if none of the above, to the duly appointed executor or ad-

ministrator of the estate of such employee;

"Sixth, if none of the above, to other next of kin of such employee entitled under the laws of domicile of such employee at the time of his death."

The narrow question for decision is whether an illegitimate child is a "child" within the meaning of the statute. If so, Edward prevails; if not, Bessie does. Congress has given us no definition of the word "child" as used in the Act. The threshold question is whether the determination of Congress' meaning is to be reached without reference to state law, or whether governing standards of applicable state law establish the relationship.

The cases deciding the reference point for and the meaning of "child" or "children" within the terms of a federal statute are in hopeless confusion. Thus, in construing the Death on the High Seas Act, 46 U.S.C.A. § 761, the court made no reference to state law and construed "children" to include illegitimate children. Middleton v. Luckenback S. S. Co., 70 F.2d 326 (C.A.2, 1934), cert. den. 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674 (1934). Similarly, in Huber v. Baltimore and Ohio Railroad Company, 241 F.Supp. 646 (D.C.Md.1965), illegitimates were held entitled to compensation as "children" under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., on the basis of federal law. Cf., however, Poff v. Pennsylvania Railroad Company, 327 U.S. 399, 66 S.Ct. 603, 90 L.Ed. 749 (1946), holding that the meaning of "next of kin" as used in the same statute is to be determined by state law.

Then there are the cases construing the National Service Life Insurance Act. 38 U.S.C.A. § 701 et seq. Some cases have construed the meanings of designated family relationships in accordance with local family law principles,[1] while other

---

1. Lembcke v. United States, 181 F.2d 703 (C.A.2, 1950); United States v. Snyder, 85 U.S.App.D.C. 198, 177 F.2d 44 (1949); Muir v. United States, 93 F.Supp. 939 (N.D.Cal.1950); De Lano v. United States, 183 F.Supp. 781 (D.C. 1959).

cases, construing the same relationships under the same Act, have not relied on state law for their determination.[2]

 The National Service Life Insurance Act is analogous to the Act involved here. See Tatum v. Tatum, 241 F.2d 401, 405 (C.A.9, 1957). Plaintiff urges that this Act, the Federal Employees' Group Life Insurance Act, should be construed without reference to local law. Regretfully, I cannot agree.[2a] Family relationships are primarily matters of state concern; there is no federal law of domestic relations. De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). In De Sylva, the Court said, at pages 580–581, 76 S.Ct. at page 980:

"* * * To decide who is the widow or widower of a deceased author, or who are his executors or next of kin, requires a reference to the law of the State which created those legal relationships. The word 'children,' although it to some extent describes a purely physical relationship, also describes a legal status not unlike the others. To determine whether a child has been legally adopted, for example, requires a reference to state law. We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' in § 24. This does not mean that a State would be entitled to use the word 'children' in a way entirely strange to those familiar with its ordinary usage, but at least to the extent that there are permissible variations in the ordinary concept of 'children' we deem state law controlling. Cf. Seaboard Air Line Railway v. Kenney, 240 U.S. 489, [36 S.Ct. 458, 60 L.Ed. 762]. * * *"

In La Bove v. Metropolitan Life Insurance Company, 264 F.2d 233 (C.A.3, 1959), the court had before it a suit under the Act here involved. In that case, the child's natural father and mother had been divorced and the mother had remarried. The child was living with her mother and the new husband, and the husband adopted the child. The law of the domicile, New Jersey, provided:

"* * * 'A. The entry of a judgment of adoption shall terminate all relationships between the child and his parents, and shall terminate all rights, duties, and obligations of any person which are founded upon such relationships, including rights of inheritance under the intestate laws of this State; * * *.'"

Judge Goodrich, for the court, held that New Jersey law was controlling. He said, at page 234:

"* * * Although the rights arise from the provision of the United States statute, we take it that the applicable law to determine whether Francine Kasser is to be considered her natural father's child for the purpose involved here is to be settled by state law so far as applicable. * * *"

Plaintiff urges that we should look to the New York laws of inheritance to determine the rights of this minor child, citing Grove v. Metropolitan Life Insurance Company, 271 F.2d 918 (C.A.4, 1959). That case, however, does not stand for any such proposition. As was said in the opinion, at page 919:

"* * * The parties agree that whether Margaret is entitled to the proceeds under Virginia law depends upon whether she is a legitimate child according to the Virginia statute, * * *."

The issue before the court, then, was not whether an illegitimate is entitled to the proceeds of the policy, or whether state inheritance law is the reference, but whether under state law the child was legitimate. True, in De Sylva, the Court looked to the state inheritance laws

---

2. Carpenter v. United States, 168 F.2d 369, 3 A.L.R.2d 841 (C.A.3, 1948); United States v. Philippine National Bank, 110 U.S.App.D.C. 250, 292 F.2d 743 (1961).

2a. Cf. Note, 76 Harv.L.Rev. 337, 343–44 (1962).

to determine the right of an illegitimate child to succeed to his father's renewal rights in a copyright. Significantly, the Court pointed out, 351 U.S. at page 582, 76 S.Ct. at page 981:

" * * * Since the author cannot assign his family's renewal rights, § 24 takes the form of a compulsory bequest of the copyright to the designated persons. This is really a question of the descent of property, and we think the controlling question under state law should be whether the child would be an heir of the author. * * * "

However, the Federal Employees' Group Insurance Act is not an act of inheritance or descent of property. The rights conferred are not conferred by inheritance, but by a contract issued pursuant to a statute. The question of who falls within the statutory class is obviously unrelated to laws of succession,[3] and it is to be determined by the relevant state law of status. Cf. La Bove v. Metropolitan Life Insurance Company, supra; Tatum v. Tatum, 241 F.2d 401 (C.A.9, 1957), where the court looked to state law of marriage to determine whether the claimant was a "widow" within the meaning of this Act.

Looking, then, as we must, to New York law, it is clear that the minor does not have the standing of a "child" of the decedent.

In In Re Cady's Estate, 257 App.Div. 129, 12 N.Y.S.2d 750, 751 (1939), aff'd per curiam, 281 N.Y. 688, 23 N.E.2d 18 (1939), the court said, " * * * The common law rule was not a statute of distribution, rather it established that the illegitimate was not to be regarded the child or descendant of any one. * * * "

In Anonymous v. Anonymous, 174 Misc. 906, 22 N.Y.S.2d 598, 603 (1940), the court said, " * * * Generally speaking, except in specific respects provided by statute, a child born out of wedlock is still *nullius filius*. * * * "

It is also clear under New York law that this status, or lack of it, does not arise from statutes of distribution.

" * * * The provisions of statute of distribution that all existing modes, rules and canons of descent were abolished, did not change common-law rule that an illegitimate is nobody's son. * * * The common-law rule that an illegitimate was nobody's son was not a statute of distribution, but established that the illegitimate was not to be regarded the child or descent of anyone. * * * " In Re Wood's Estate, 203 Misc. 809, 119 N.Y.S.2d 110, 114 (1953), appeal dismissed, 282 App. Div. 1093, 126 N.Y.S.2d 927 (1953).

Perhaps the time will come when enlightened legislatures will remove the stigma of the bar sinister. Perhaps someday there will be a legislative recognition that none of this is the fault of the child, who did not even ask to be born, much less to be born illegitimate and to exist as the child of no one. But that day has not yet arrived for New York. Plaintiff's motion must be granted.

---

**3.** In Carpenter v. United States, n. 2, supra, the court said, 168 F.2d at page 370, " * * * In considering the instant case it is to be noted that the question is not one of the state law of inheritance or descent and distribution. The problem is not what or from whom an adopted person may inherit or be entitled to distribution from the estate of a decedent under state law. It is, rath-

er, what persons are to be included as possible beneficiaries of a special type of insurance policy issued under the authority of the United States to those serving in its armed forces. * * * " I respectfully disagree with Brantley v. Skeens, 105 U.S.App.D.C. 246, 266 F. 2d 447 (1959) to the extent that it is inconsistent with this holding.