Chester O. WANVIG, Jr. and Martha I. Wanvig, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 17833.

United States Court of Appeals, Seventh Circuit.

March 11, 1970.

Steven E. Keane, Milwaukee, Wis., Jere D. McGaffey, Milwaukee, Wis., Foley, Sammond & Lardner, Milwaukee, Wis., of counsel, for appellants.

Johnnie M. Walters, Daniel B. Rosenbaum, Lee A. Jackson, Elmer J. Kelsey, Attys., U. S. Dept. of Justice, Washington, D. C., David J. Cannon, U. S. Atty., Milwaukee, Wis., for appellee.

Before HASTINGS and CASTLE, Senior Circuit Judges, and CAMPBELL, District Judge.

CASTLE, Senior Circuit Judge.

This case presents the issue of whether or not a taxpayer who has received a stock option from a corporation should be considered as owning the stock held by an adoptive sister or adoptive father, as he would that owned by a natural sibling, or ancestor. The facts are stipulated. On November 3, 1958, taxpayer was granted stock options by Globe Union, Inc., for the purchase of 4,500 shares of stock of the company as compensation for services rendered. On November 22, 1960, Globe Union granted taxpayer options to purchase 6,000 shares. Both options were duly executed.

Under 26 U.S.C. § 424, these options would qualify as "restricted stock options"—and thus would not be taxed as income until the stock purchased thereby was sold—if taxpayer did not own 10% or more of the total combined voting power of all classes of stock of the company. Both parties agree that taxpayer would own less than the maximum 10% unless, regarding the 1960 stock option, the shares owned by his adoptive sister

are attributed to him, and, regarding the 1958 option, unless the stock owned by his adoptive father and adoptive sister are attributed to him.

The issue, therefore, requires the interpretation of 26 U.S.C. § 421(d) (1) (C) (i), as it stood in 1961 (that section is now § 425(d) (1)), which provided:

"such individual [with respect to whom the 10% limitation is being determined] shall be considered as owning the stock owned, directly or indirectly, by or for his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * *."

The district court held that adoptive siblings and adoptive parents were included within § 421(d) (1) (C) (i), and thus the taxpayer owned more than 10% of the voting stock of Globe Union. Accordingly, the court held, the stock options granted to taxpayer in 1958 and 1960 did not fall within the favored class of "restricted stock options." Taxpayer appeals from that holding.

■ The Congressional purpose to be served by the statute is to include within a taxpayer's stock ownership in a corporation stock which would normally be in the control of the taxpayer "because of the family or other relationship existing between him and the actual owner." [1] Thus, a member of the taxpayer's family is presumed by the statute to be within the control of the taxpayer in order to prevent a large shareholder of a corporation from constructively owning stock in the name of a family member so as to avoid the tax consequences otherwise attaching to his ownership position in the company.

Similar presumptions are found in other sections of the Internal Revenue Code. See 26 U.S.C. §§ 267(c) (4), 544(a) (2), 318(a) (1), and 1563(d).

The latter two sections, however, expressly provide that "a legally adopted child of an individual shall be treated as a child of such individual by blood." From this inclusion, and from the fact that § 421(d) (1) (C) (i) included siblings "(whether by the whole or half blood)," taxpayer argued that Congress intended to exclude adopted siblings from the scope of the latter statute. Also, since § 421 used the term "ancestor"—normally defined as one from whom a person is lineally descended—rather than "parent," taxpayer argues that adoptive parents should not be included within the scope of the statute.

■ We are of the opinion that the statute in question includes adoptive siblings and ancestors, since to hold otherwise would be inconsistent with the dominant congressional purpose of including stock likely to be controlled by the taxpayer within his aggregate holdings in a corporation. Surely, the stock holdings of an adoptive sister or parent would be as much in the control of the taxpayer as the stock holdings of a natural or half-sister or a natural parent. Indeed, half-blooded siblings are often the products of broken homes, whereas adoptive siblings most often would be raised in the same home. We perceive no rational basis for differentiating between an adoptive sibling and a half-blooded or natural sibling for purposes of this statute. No showing has been made or advanced—and it would be doubtful if such a showing could be made —that one type of sibling is any more likely than the other to be under the control of his or her brother or sister.

We are not persuaded by taxpayer's contention that the statute should be strictly construed in his favor. We are here dealing with a provision allowing an exemption, rather than one levying a tax. In United States v. Stewart, 311

1. H.Rep.No.1546, 75th Cong., 1st Sess., pp. 6–7 (1939–1 Cum.Bull. (Part 2) 704, 708). The House Report from which the above-quoted language was taken was rendered in connection with Sections 24 and 351(b) (1) (E) of the Revenue Act of 1934, which sections contained language identical to the language in issue in the instant case, and which has been carried forward to Sections 267(c) (4) and 544(a) (2) of the Internal Revenue Code of 1954.

U.S. 60, 71, 61 S.Ct. 102, 109, 85 L.Ed. 40 (1940), the Supreme Court stated:

"In that posture of the case, respondent has succeeded only in casting some doubt on the proper construction of the statute. Yet those who seek an exemption from a tax must rest it on more than a doubt or ambiguity. Bank of Commerce v. Tennessee, 161 U.S. 134, 146 [16 S.Ct. 456, 460, 40 L. Ed. 645], 163 U.S. 416, 423 [16 S.Ct. 1113, 1116, 41 L.Ed. 211]. Exemptions from taxation cannot rest upon mere implications. United States Trust Co. [of New York] v. Helvering, 307 U.S. 57, 60 [59 S.Ct. 692, 83 L.Ed. 1104]."

Moreover, our conclusion is in keeping with current legislative and judicial sentiment. The statutes of most states, as well as the Model Probate Code § 27 (A.B.A.1946) and the Uniform Adoption Act § 12(1) (9 U.L.A. 35, 1957), provide that adopted children be treated on an equal footing with natural children for purposes of inheritance. See e.g. Ill. Rev.Stat. Ch. 3, § 14 (1967); 27 Wis. Stat.Ann. § 237.04; 6 Wis.Stat.Ann. § 48.92; 2 Burns' Ind. Statutes § 3–121; 20 Pa.Stat.Ann. § 1.8; N.J.S.A. 9:3–9. The Supreme Court of Wisconsin, the State in which the instant action arose, has held that an adopted child is a "lineal descendant" of the adoptive parent. Estate of Nelson, 266 Wis. 617, 64 N.W.2d 406 (1954).

In Woodward v. United States, 341 U. S. 112, 113, 71 S.Ct. 605, 95 L.Ed. 648 (1951) (Per Curiam), the Supreme Court recognized the trend against drawing a distinction between adopted and natural children. In that case, the statute in question—§ 602(g) of the National Service Life Insurance Act of 1940, 38 U.S.C. § 802(g)—provided that the life insurance obtained under the

Act was "payable only to a widow, widower, child * * *, parent, brother or sister of the insured. * * *" The Court held that, while Congress had not expressed itself on the subject, policy dictated that a brother by adoption was within the permissible class of beneficiaries under § 602(g).

"We are persuaded by the policy against drawing such a distinction [between adoptive and natural siblings] in the family relationship. Contemporaneous legal treatment of adopted children as though born into the family is a manifestation of that policy. See Carpenter v. United States [168 F.2d 369 (3d Cir. 1948)]; McDonald v. United States, 91 F.Supp. 163 (D.C.D.Mass.1950). Consequently, we hold that a brother by adoption is a permissible beneficiary under § 602(g) of the National Service Life Insurance Act of 1940." [2]

The *Carpenter* case, cited by the Supreme Court in *Woodward*, dealt with the issue in greater depth. After reviewing several noted authorities in the field of adoption, the Court concluded:

"We are convinced that the current of modern thought on the matter is wholly in the direction of placing the adopted child in the family of his adoption as completely as though the relationship from the beginning had been by blood. * * *

"Because the language of the Congress is not explicitly to the contrary and because the legislative history does not indicate a contrary intent, we think that the construction to be given the statute should be that of the contemporaneous meaning of the effect of adoption." 168 F.2d at 372–373.

Thus, by parity of reasoning, we conclude that no reason exists for distin-

2. The statute in question in the above case had behind it a legislative history which was arguably more compelling from the taxpayer's point of view than the statute before us in the instant case. Thus, the predecessor statute to § 602(g) had expressly included adoptive siblings within the terms "brother or sister," while the later statute failed to state that inclusion. Moreover, "parent" and "child" were defined to include adoptive parents and children, whereas no such definitions were provided for siblings.

guishing between adopted and natural children under the statute presently before this Court. An adopted child is assimilated into and becomes an integral part of the adopting family as much as does a child naturally born into the family. Accordingly, the adopted child or adoptive parent would be as much under the influence of other family members as would a natural child or parent. Without evidence of any congressional intention opposing this policy, we are unwilling to depart from the current of modern thought expressed above.

The judgment below is affirmed.

Affirmed.