### In re THENAULT.

Naturalization Petitions Nos. 13928, 13929.

District Court of the United States for the District of Columbia.
April 23, 1942.

Sarah S. Thenault, pro se.
Eugene Cole, naturalization examiner.

McGUIRE, Justice.

These are petitions for the naturalization of Georges Spencer Thenault and Catherine Bathilde Thenault, respectively, minor children of Georges Thenault and Sarah Spencer Thenault, husband and wife, the former a French subject presently residing in France, and the latter a citizen of the United States presently residing therein, together with the children above referred to.

### Findings of Fact

The child Georges Spencer Thenault was born in the City of Washington, District of Columbia, on May 28, 1930, and his sister, Catherine Bathilde Thenault, was born in Hyannis, Massachusetts, on July 22, 1928. Their father was at the time of their birth a citizen of France, as he presently is, and was attached to the French Embassy as Air Attache, although at the present time, and since 1933, he has been engaged in private business in France.

Their mother is a citizen of the United States by birth, which citizenship she re-

tained, since her marriage took place in 1925 after the passage of the so-called Cable Act, September 22, 1922, 42 Stat. 1021, 1022. She is permanently residing in the United States.

### Conclusions of Law

The sole question here presented is whether or not these children, although physically born within the territorial limits of the United States are entitled to be naturalized by petition of the citizen parent—in this case their mother—under the provisions of Section 315 of the Nationality Act of 1940, Public Act No. 853, October 14, 1940, 54 Stat. 1137 at 1146, 8 U.S.C.A. § 715. The Section reads as follows: "A child born outside of the United States, one of whose parents is at the time of petitioning for the naturalization of the child, a citizen of the United States, either by birth or naturalization, may be naturalized if under the age of eighteen years and not otherwise disqualified from becoming a citizen and is residing permanently in the United States with the citizen parent, on the petition of such citizen parent, without a declaration of intention, upon compliance with the applicable procedural provisions of the naturalization laws."

■ Of course, the mere physical fact of birth in the country does not make these children citizens of the United States, inasmuch as they were at that time children of a duly accredited diplomatic representative of a foreign state. This is fundamental law and within the recognized exception not only to the Constitutional provision relative to citizenship, Amendment Article 14, Section I, but to the law of England and France and to our own law, from the very first settlement of the Colonies. United States v. Wong Kim Ark, 169 U.S. 649, 655 et seq., 18 S.Ct. 456, 42 L.Ed. 890, and the review of principles and collection of authorities therein found.

At the present time there is no nationality treaty with France.

Do they then come within the provisions of the Nationality Act hereinbefore referred to? That is, must they have been born physically outside the United States in order to bring them within its purview, or may they be regarded as "born outside the United States" and thus within its provisions—and may the citizen parent, the mother, as a consequence, petition for their naturalization?

■ Although these children in a geographical sense were born within the United States, by virtue of the status of their father at that time, they became subject to the jurisdiction of the French Republic as effectively as though they were born within its territorial limits and outside those of the United States. They thus may be said to have been "born outside of the United States" within the meaning of the statute.

■ While hearings were held antecedent to the passage of the so-called Nationality Code, the same were unprinted. The legislation was passed, however, for the purpose of effecting a complete revision of the laws of the United States relative to nationality, in the light of new conditions, to reconcile seemingly conflicting provisions of different statutes, and to "facilitate the naturalization of worthy candidates, while protecting the United States against adding to its body of citizens persons who would be a potential liability rather than an asset." (Letter of transmittal, dated June 1, 1938, addressed to the President by the Committee consisting of the Secretary of State, the Attorney General, and the Secretary of Labor, designated by him by the Executive Order of April 25, 1933, for the purpose of reviewing the nationality laws of the United States, "to recommend revisions, and to codify the laws into one comprehensive nationality law for submission to the Congress.")

The reports of the Senate and House of Representatives, as well as their conference report, accompanying H.R. 9980 (76th Congress, 3rd Session, which finally became the Nationality Act of 1940, 8 U.S.C.A. § 501 et seq.), indicate a liberality of view with reference to circumstances which might be said to bear an analogy to those set forth in the present petitions.

The petitions are granted.