**Petition of F.**

District Court, S. D. New York.

Oct. 1, 1947.

Petitioner pro se.

RIFKIND, District Judge.

The petitioner has admitted an act of adultery within the statutory period during which it is incumbent upon him to establish that he has been a person of good moral character. 8 U.S.C.A. § 707(a). His application for naturalization must, therefore, be denied. Estrin v. United States, 2 Cir., 1935, 80 F.2d 105; Petitions of Rudder, 2 Cir., 1947, 159 F.2d 695.

It is not the intention of this court to condone acts of adultery nor to advocate a relaxation of the moral requirements set out in the Naturalization Act. Comment is, nevertheless, in my view, appropriate concerning the manner by which the evidence of adultery was obtained. At the time the petitioner was examined he had been living separate and apart from his wife for eleven years. Guided, apparently, by nothing more substantial than a cynical view of human frailty, the examiner pushed his examination of the petitioner and after obtaining a denial of misconduct, returned to the inquiry until he extracted the admission of

adultery.[1] Presumably, the examiner knew that, were the petitioner represented by counsel, he would undoubtedly have been advised to refuse to answer the incriminating and degrading question and his refusal would have been respected. But he was not represented by counsel; and, the examiner, instead of calling attention to the privilege, took advantage of petitioner's defenselessness.

■ It is true that at the opening of the examination the examiner said to the petitioner, "Any statement that you make must be voluntary. Any statement that you make can be used against you. Under these circumstances are you willing to be sworn and to testify?" That, certainly, was insufficient to warn a layman of his constitutional privilege against self incrimination.

Were this a solitary example of bureaucratic zeal I would be tempted to overlook it. Indeed, it is not. It is a pattern of recurrent conduct, often accompanied by a degree of prurient prying which I find offensive, and which I believe ought not to be tolerated unless some important social end outweighs our reluctance to countenance this type of inquiry. I see no such end in view. I do see much mischief, however, in pursuing what appears to be the present policy.

I take it that it is not among the purposes of the Naturalization Act to procure evidence to support actions of divorce, nor to introduce into felicitous homes, the fear that some time, somehow, the existence of a written admission of indiscretion by one spouse, before or after marriage, may become known to the other spouse. Nor do I see any advantage in a mode of examination which is an open invitation to perjury.

■ There may be situations in which the petitioner's general mode of life or extraneous evidence naturally guides the inquiry into channels of the kind herein described. Such was not the case in this instance. There was no independent evidence of conduct offensive to the community's standards. Even the allegedly abandoned wife gave no stronger testimony than the following:

"Q. Do you know whether he is living with a woman now? A. There are rumors that he is."

Considering the source of this statement, it is indeed too flimsy even to justify suspicion.

The responsibility for admitting aliens to citizenship is lodged in the courts. The work of the examiners is intended to be of assistance to the courts in discharging that responsibility. The due respect which is owing from the judiciary to the executive agencies, it seems to me, is not transgressed when a court expresses its displeasure with assistance which is wanting in the dignity entitling it to judicial approbation.

---

[1] "Q. Did you leave your wife for another woman? A. I did not.

"Q. Have you taken up with any other woman except your wife? A. I do not know what the question applies to.

"Q. Have you lived with any other woman except your wife? A. No, I have not lived with any other woman—a family life, if that is what you mean. * * *

"Q. You state, then, the charge that you have had other women is false? A. Absolutely.

"Q. And that you have not had relations with any other women since your separation? A. Family relations?

"Q. Sexual relations? A. I did not.

"Q. You have lived alone since the separation? A. Yes. * * *

"Q. You have not had sexual relations since your separation with any other women? A. Well, to tell you the truth—I could not say that is true.

"Q. You say you have had sexual relations with other women since your separation? A. Sexual relations but not family.

"Q. When was the last time you had sexual relations? A. A few months ago."