In the Matter of the Petition for Naturalization of CHIN THLOOT HAR WONG in Behalf of Her Adopted Son, Kenneth Wong.

No. 746968.

United States District Court

S. D. New York.

Dec. 10, 1963.

**156**

Benjamin Gim, New York City, for petitioner.

Marjorie Jackson, Naturalization Examiner, New York City, for the United States.

FEINBERG, District Judge.

This case, like so many arising under the immigration and naturalization laws, raises an issue narrow in scope but vitally important to those affected by it. The question is whether a child adopted by a husband and wife, only one of whom is a citizen, can be naturalized upon the petition of the citizen alone.

On April 29, 1963, Chin Thloot Har Wong, a naturalized United States citizen, filed a petition for the naturalization of her adopted son, Kenneth Wong. Kenneth, who is now eleven, was born in Hong Kong and was brought to the United States almost four years ago, as an orphan, with the help of the International Social Service Agency.[1] Thereafter, he was adopted by petitioner and her husband, Thlick Yuen Wong, in New York County on December 9, 1959. Since January 29, 1959, the child has resided continuously in the United States with his adoptive parents.

An earlier petition for naturalization was filed jointly by petitioner and her husband in March 1962, but has since been withdrawn.[2] The present application is opposed by the Immigration and Naturalization Service (the "Service"). The Naturalization Examiner who conducted the preliminary examination has recommended that the petition be denied because (1) the adoptive father failed to join in the petition, and (2) petitioner failed to establish the United States citizenship of the adoptive father.

1. Kenneth was admitted under § 4 of the Act of September 11, 1957, 71 Stat. 639, providing for nonquota immigrant visas for orphan children, adopted, or to be adopted, by United States citizens. Section 4 was one of a number of temporary measures made permanent in revised form by the Act of September 26, 1961, §§ 3, 10, 75 Stat. 650, 654, 8 U.S.C. § 1155(b, c) (Supp.1962).

2. Petitioner's Brief recites at pp. 4–5 that on March 9, 1962, petitioner and her husband joined in filing a petition to naturalize their adopted son. At the hearing on that petition, her husband presented, as evidence of his United States citizenship, a certificate of identity issued by the Immigration Service at Boston on September 10, 1937, in connection with his admission to the United States, and a United States passport issued by the Department of State in 1946. The Naturalization Examiner, the Brief states, originally recommended approval of the petition, but was "apparently overruled by his superiors who * * * declined to recognize a certificate of identity or a United States passport as sufficient evidence of citizenship." See Gordon and Rosenfield, Immigration Law and Procedure § 6.14a, at 675 (1959). Therefore, the Court assumes without deciding that Thlick Yuen Wong is not a citizen.

Section 323 of the Immigration and Nationality Act (the "Act") of 1952, 66 Stat. 246 (1952), 8 U.S.C. § 1434, sets forth the criteria for determining eligibility for naturalization of adopted children:

## "CHILDREN ADOPTED BY UNITED STATES CITIZENS

"Sec. 323(a)  An adopted child may, if not otherwise disqualified from becoming a citizen by reason of sections 313, 314, 315 or 318 of this Act, be naturalized before reaching the age of eighteen years upon the petition of *the adoptive parent or parents,* upon compliance with all the provisions of this title, if *the adoptive parent or parents* are citizens of the United States, and the child—

"(1) was lawfully admitted to the United States for permanent residence;

"(2) was adopted before attaining the age of sixteen years; and

"(3) subsequent to such adoption has resided continuously in the United States in legal custody of the adoptive parent or parents for two years prior to the date of filing such petition.

"(b) In lieu of the residence and physical presence requirements of section 316(a) of this Act such child shall be required to establish only two years' residence and one year's physical presence in the United States during the two-year period immediately preceding the filing of the petition.  If the child is of tender years he may be presumed to be of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States."  (Emphasis added.)

There is no dispute as to compliance in this case with the admission, age, custody, physical presence, or residence requirements of the statute.  Nor does petitioner challenge here the Examiner's finding with regard to the citizenship of the adoptive father.  The question to be decided is whether both adoptive parents must join in filing the petition for naturalization and both must be United States citizens.[3]

The issue before the Court is one of first impression.  Both the Service and petitioner contend that the meaning of the phrase, "the adoptive parent or parents," which occurs twice in the first paragraph of Section 323(a), is clear, although the clear meaning found by one is diametrically opposed to the clear meaning found by the other.  The Service contends that the phrase "the adoptive parent or parents" means the adoptive parent when there is only one adoptive parent, and both adoptive parents when there are two adoptive parents.[4]  Petitioner claims that the phrase means either of the adoptive parents when there are two.[5]

Both sides, in effect, urge the Court to resort to the "plain meaning" rule in construing the statute.  Caminetti v. United States, 242 U.S. 470, 490, 37 S.Ct. 192, 61 L.Ed. 442 (1917).  Such a facile resolution of the controversy would be most attractive if the Court thought that the construction urged by either of the parties was so clearly correct as to justify invocation of this traditional canon of construction.[6]  But, it cannot be

3. For the purpose of simplifying discussion, it will be assumed that a statement asserting the necessity for both parents to be citizens implies the necessity for both joining in the petition and conversely.

4. Government's Reply Memorandum, pp. 1–2.

5. Brief of Petitioner, p. 7.

6. The rule, as stated in its classic form in Caminetti v. United States, 242 U.S. 470, 490, 37 S.Ct. 192, 61 L.Ed. 442 (1917), requires that "when words are free from doubt they must be taken as the final expression of legislative intent" unless such a construction would lead to "absurd or wholly impracticable consequences * * *."  It has been adhered to in many cases, e. g., United States v. Shreveport Grain & Elevator Co., 287

said that the language in question is unambiguous. Standing alone, the phrase "adoptive parent or parents" may be construed in a restrictive sense to mean one parent when there is only one adopting parent and both when there are two adopting parents, as urged by the Service, or it may just as logically be construed in a permissive sense to mean either or both, as argued by petitioner. Moreover, Congress within the same Act has treated this problem with greater precision. Thus, some years after Section 323(a) was adopted,[7] Congress dealt with the adoption problem in a specialized context. In facilitating the naturalization of foreign born children adopted by certain United States citizens stationed abroad,[8] Congress enacted subdivision (c) to Section 323, which provides in part as follows:

"(c) Any such adopted child (1) *one of whose adoptive parents* is (A) a citizen of the United States, * * and (3) *whose citizen adoptive parent* declares before the naturalization court in good faith an intention to have such child take up residence within the United States immediately upon the termination of such service or employment abroad of *such citizen adoptive parent,* may be natu-

ralized upon compliance with all the requirements of the naturalization laws except that no prior residence or specified period of physical presence within the United States or within the jurisdiction of the naturalization court or proof thereof shall be required, and paragraph (3) of subsection (a) of this section shall not be applicable." (Emphasis added.)

71 Stat. 642 (1957), as amended 8 U.S. C. § 1434(c) (Supp.1962). Thus, Congress made absolutely clear in this subdivision that only one adoptive parent need be a citizen.

On the other hand, Section 321 of the Act, which deals with automatic acquisition of citizenship by children born of alien parents outside of the United States, clearly requires the naturalization of both parents if both parents are alive and there has been no legal separation, and also explicitly provides for the contingency of the child having only one parent:

"Sec. 321. (a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United

U.S. 77, 83–84, 53 S.Ct. 42, 77 L.Ed. 175 (1932); Crooks v. Harrelson, 282 U.S. 55, 60–61, 51 S.Ct. 49, 75 L.Ed. 156 (1930); United States v. Mo. Pac. R. R., 278 U.S. 269, 277, 49 S.Ct. 133, 73 L.Ed. 322 (1929); Railroad Commission v. Chicago, B. & Q. R. R., 257 U.S. 563, 588–589, 42 S.Ct. 232, 66 L.Ed. 371 (1922). In a number of instances, however, the Supreme Court has declined to follow the rule when a strict reading of the statute in question would have resulted in the emasculation of a policy which a less literal reading preserved, even though application of the plain meaning rule would not have led to an absurd or unreasonable result. Markham v. Cabell, 326 U.S. 404, 409, 66 S.Ct. 296, 90 L.Ed. 256 (1945); Helvering v. New York Trust Co., 292 U.S. 455, 464–465, 54 S.Ct. 806, 78 L.Ed. 1361 (1934); Boston-Sand and Gravel Co. v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170 (1928). Mr. Justice Frankfurter, in Association of Westinghouse Salaried Employees v. Westing-

house Elec. Corp., 348 U.S. 437, 444, 75 S.Ct. 489, 99 L.Ed. 510 (1955), stated that the "rule has not dominated our decisions. The contrary doctrine has prevailed." And, in a recent appraisal of the rule, Mr. Justice Harlan stated that "[t]he decisions of this Court have repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute * * * for 'literalness may strangle meaning,' * * *." Lynch v. Overholser, 369 U.S. 705, 710, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962).

7. The substance of Section 323(a) was first enacted in 1940, § 316, 54 Stat. 1146, and amended in particulars not relevant to issues in this case in 1952, 66 Stat. 246, 8 U.S.C. § 1434.

8. E. g., persons serving in the Armed Forces or employed by the United States Government, certain American corporations, or international organizations.

States, becomes a citizen of the United States upon fulfillment of the following conditions:

"(1) The naturalization of both parents; or

"(2) The naturalization of the surviving parent if one of the parents is deceased; or

"(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; * * *"

66 Stat. 245 (1952), 8 U.S.C. § 1432.[9] Surely then, Congress could have stated unequivocally in Section 323(a) either that citizenship by one adoptive parent is sufficient (as it chose to do in Section 323(c) quoted above) or that citizenship of both parents is necessary when there are two adoptive parents (as it did in an analagous situation in Section 321(a) (1) quoted above). A clearer statute could have been written merely by use of the phrase "the adoptive parent or one of the adoptive parents," or, alternatively, if Congress intended the meaning urged by the Service, "the adoptive parent if there is only one adoptive parent or both adoptive parents if there are two." Cf. Flora v. United States, 362 U.S. 145, 150, 80 S.Ct. 630, 633, 4 L.Ed. 2d 623 (1960).

A comparison of the critical language of Section 323(a) with related provisions of the Act thus illustrates how ambiguities often exist where upon superficial examination the words may have seemed clear. See Helvering v. New York Trust Co., 292 U.S. 455, 465, 54 S. Ct. 806, 78 L.Ed. 1361 (1934). Since the language of Section 323(a) gives rise to uncertainty as to the meaning Congress intended, the Court may consult the legislative history of the statute and examine related sections of the Act for the purpose of ascertaining the meaning of Section 323(a). United States v. Pub. Util. Comm., 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020 (1953); Woodward v. United States, 341 U.S. 112, 71 S.Ct. 605, 95 L.Ed. 648 (1951). It is also helpful and proper in construing legislative language governing the status of an adopted child to take into account the contemporaneous legal treatment of adopted children. Woodward v. United States, supra; Carpenter v. United States, 168 F.2d 369, 370, 3 A.L.R.2d 841 (3 Cir. 1948); McDonald v. United States, 91 F.Supp. 163, 170–171 (D.Mass.1950).

An examination of the legislative history of Section 323(a) does not disclose that Congress was conscious of the particular problem in this case. While there are scattered references in committee reports and hearings to the adoptive parental unit, they are inconclusive since the phrases, "adoptive parent" and "adoptive parents," seem to have been used interchangeably without any awareness that the singular-plural distinction might have any critical significance.[10] The Service contends[11] that Congress was aware that in many jurisdictions a single adult can adopt a child and that, consequently, the citizenship requirement for filing a petition for nat-

---

9. The forerunner of this section, 54 Stat. 1145 (1940), was adopted contemporaneously with the predecessor of § 323 (a), the provision in suit.

10. Compare Hearings on H.R. 6127 superseded by H.R. 9980 Before the House Committee on Immigration and Naturalization, 76th Cong., 1st Sess. 93 (1940) [hereinafter cited as Hearings on H.R. 9980] and Committee of Advisers, 76th Cong., 1st Sess., Nationality Laws of the United States, Message from the President of the United States, pt. 1, Proposed

Code with Explanatory Comments 445 (House Comm. Print 1939) [hereinafter cited as 1940 Explanatory Comments] with S.Rep. No. 2150, 76th Cong., 3d Sess. 5 (1940) and S.Rep. No. 1515, 81st Cong., 2d Sess. 707 (1950). See also H.R.Rep. No. 1199, 85th Cong., 1st Sess., reprinted, 1957 U.S.Code Cong. & Admin. News, p. 2018 (stating that a petition for nonquota status for an alien child adopted by a United States citizen and spouse shall be filed by "the adoptive parent.").

11. Government's Reply Memorandum, p. 2.

uralization of the adopted child was made to depend upon the adoption procedure employed in a particular case. Petitioner also argues [12] that Congress was aware of the variety of adoption procedures, but infers from this that Congress intended to authorize a petition for naturalization by only one citizen parent whether there are one or two adoptive parents. However, counsel have not cited any specific references in the legislative history of Section 323(a) to the adoption procedures under the laws of the various jurisdictions nor has the Court been able to discover any such references.[13] Moreover, even if Congress were aware of the diversity of adoption laws, this alone would not help in choosing between the conflicting inferences drawn by the parties. Examination of the Congressional approach to the problem of naturalization of adopted children in the last few decades, however, is more productive.

Prior to enactment of the Nationality Act of 1940, there was no procedure available for the naturalization of an adopted alien child through his adoptive parent or parents.[14] President Roosevelt, by Executive Order of April 25, 1933, designated the Secretary of State, the Attorney General, and the Secretary of Labor a Committee of Advisers to review the nationality laws of the United States, to recommend revisions, and to codify those laws into one comprehensive nationality law for submission to the Congress.[15] In submitting its recommendations to the President in June 1938, the Committee commented:

"There is, according to an opinion of the Attorney General, dated June 17, 1935, no provision of present law by which an alien adopted child may be naturalized through the act of the adoptive parent. The adoption laws make it possible for foster parents to have the adopted child recognized in almost every other respect as though it were the own child of the foster parents. The fact of adoption is usually an indication of a degree of affection on the part of the adoptive parents justifying the recognition of the relationship of parent and child under the naturalization laws."

1940 Explanatory Comments, supra note 12, at 445–46. A similar statement appears in the Senate Report accompanying H.R. 9980, which became the Nationality Act of 1940.[16] The major prob-

---

12. Brief of Petitioner, pp. 15–16.

13. The House Report accompanying a more recent bill that became the Act of September 26, 1961, §§ 3, 10, 75 Stat. 650, 654, 8 U.S.C. § 1155(b, c) (Supp.1962), relating to nonquota immigrant status for eligible orphans, does contain an abbreviated compilation of the statutory provisions governing adoption in the fifty states. H.R.Rep. No. 1086, 87th Cong., 1st Sess. (1961), reprinted, 1961 U.S. Code Cong. & Admin.News, pp. 2950, 2956–2965. Apparently, however, it is required that the orphan be adopted by both parents jointly. See Section 4 of the Act of September 11, 1957, 71 Stat. 639, 8 U.S.C. § 1101(b) (1) (F).

14. Powers v. Harten, 183 Iowa 764, 167 N.W. 693 (1918); 38 Ops.Atty.Gen. 217 (1935).

15. The Cabinet committee set up a technical advisory committee consisting of six experts on the subject from the Department of State, one from the Department of Justice, and six from the Department of Labor, who worked for a period of several years in producing the draft code which was submitted to the Congress by the President on June 13, 1938. See S.Rep. No. 2150, 76th Cong., 2d Sess. 2 (1940).

16. The pertinent part of the Report states:
"Humane Provisions
"Under present law no provision is made for the acquisition of citizenship by children through adoption by citizen parents, even though such children may under State laws be entitled to property and other rights that blood children of the parents would possess. Frequently the ties of affection between adoptive parents and their children are very strong. The Code would permit their naturalization before reaching the age of 18 years upon the petition of the adoptive parent or parents."
S.Rep. No. 2150, 76th Cong., 3d Sess. 5 (1940), quoted in part, In re Petition for Naturalization of Glover, 207 F.Supp. 841, 842 (E.D.La.1962).

lem with which the Committee was concerned with respect to adopted children was that the adoption laws might afford an easy means for circumvention of the normal naturalization procedure. See 1940 Explanatory Comments, supra note 12, at 446; Hearings on H.R. 3673, H.R. 77 Before the House Committee on Immigration and Naturalization, 73d Cong., 1st Sess. 2–6 (1933). To assure that citizenship would be granted only in cases of bona fide adoptions, the Committee of Advisers recommended enactment of a provision that would condition naturalization on the fulfillment of certain admission, age, custody, residence period, and physical presence requirements. This was the provision adopted by Congress in 1940 [17] and substantially reenacted in 1952 as Section 323.[18]

As to natural children born outside of the United States, one of whose parents is a citizen or becomes a citizen of the United States, while the other parent during the continuance of the marital status remains an alien, the Committee of Advisers stated that "the foreign-born child of such a union should not be deprived of the opportunity of becoming a citizen if the citizen parent is favorable to its acquisition of such status." 1940 Explanatory Comments, supra note 12, at 445. Section 315 (originally numbered Section 314) of the Act of 1940 [19] was drafted accordingly, authorizing the naturalization of a natural born child of a citizen parent and an alien parent on the petition of the citizen parent alone. See In re Thenault, 47 F.Supp. 952 (D. D.C. 1942); Hearings on H.R. 9980, supra note 12, at 91–92. This, of course, is precisely the posture of the instant case, except that the child is the adopted rather than the natural child of the petitioning

parent. Aside from those measures designed to prevent abuse of the naturalization laws, Congress apparently did not intend to distinguish between treatment of a petition for citizenship of an adopted child and a petition for citizenship of a natural child. See text accompanying notes 14–18, supra. See also Letter of Submittal, 1940 Explanatory Comments, supra note 12, at 408. Yet, were the position of the Service to prevail in this case, an additional barrier to naturalization of an adopted child would be erected by requiring both adoptive parents to be citizens.

■ Additional enlightenment as to the interpretation of the phrase "adoptive parent or parents" is provided by the recent amendments to Section 323,[20] which may properly be considered in the interpretation of the prior legislation. See Glidden Co. v. Zdanok, 370 U.S. 530, 541, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962); Federal Housing Administration v. The Darlington, Inc., 358 U.S. 84, 90, 79 S. Ct. 141, 3 L.Ed.2d 132 (1958); Great Northern Ry. v. United States, 315 U.S. 262, 276–277, 62 S.Ct. 529, 86 L.Ed. 836 (1942); New York, Phila. & Norfolk R. R. v. Peninsula Produce Exchange, 240 U.S. 34, 39, 36 S.Ct. 230, 60 L.Ed. 511 (1916). These amendments were enacted as subdivision (c) to Section 323, and, for children adopted by persons stationed abroad, eliminated the residence period and physical presence requirements contained in subdivisions (a) and (b) of Section 323. The legislative history indicates that this was the sole dispensation that Congress intended to confer upon such children. See S. Rep. No. 2132, 85th Cong., 2d Sess. (1958), reprinted, 1958 U.S.Code Cong. & Admin.News, pp. 3669, 3671; H.R. Rep. No. 1199, 85th

---

17. Section 316 of the 1940 Act, 54 Stat. 1146 (originally numbered § 315).

18. 66 Stat. 246 (1952).

19. 54 Stat. 1146 (1940). Section 315 contained no residence period or physical presence requirement as did Section 316 which exclusively governed naturalization of adopted children. In 1952, Section 315 was substantially reenacted as

Section 322 with the express statements that "no particular period of residence or physical presence in the United States shall be required," and that this Section "shall not apply to an adopted child." 66 Stat. 246, 8 U.S.C. § 1433.

20. 71 Stat. 642 (1957) and 72 Stat. 687 (1958), 8 U.S.C. § 1434 (Supp.1963), quoted at p. 158 supra.

Cong., 1st Sess. (1957), reprinted, 1957 U.S.Code Cong. & Admin.News, p. 2016. Yet, subdivision (c) clearly permits the filing of a petition for naturalization by only one citizen adoptive parent even though both parents have joined in the adoption. It would seem, therefore, that the same procedure is authorized by subdivision (a) since subdivision (c) apparently does not relax any requirements other than those indicated above.

The very provision under which Kenneth Wong was admitted into the United States as an "eligible orphan" [21] was enacted in 1957 in response to a demonstration of "extensive interest in the United States in adopting alien orphans and offering them the benefits and the loving care of American homes." H.R. Rep. No. 1199, 85th Cong., 1st Sess. (1957), reprinted, 1957 U.S. Code Cong. & Admin.News, p. 2017. In addition to the provision governing "eligible orphans," the 1957 Act, in furtherance of the same policy, defined "child" to include any adopted child who has fulfilled the specified age, custody, and residence requirements,[22] thereby including qualified adopted children within the class eligible for nonquota immigrant status.[23] In Ng Fun Yin v. Esperdy, 187 F.Supp. 51 (S. D.N.Y.1960), a United States citizen petitioned, pursuant to the latter amendment, for a nonquota immigrant visa for an alien born child adopted by the petitioner and his alien spouse. This 1957 amendment requires the adopted child to have been "in the legal custody of, and * * * [have] resided with, *the adopting parent or parents* for at least two years * * *." (Emphasis added.) [24] The District Director and the Board of Immigration Appeals denied the application on the ground that the adopted child had resided for the statutory period with the noncitizen adopting par-

ent only, and, therefore, had failed to comply with the statute which had been previously interpreted by the Attorney General [25] as requiring two year legal custody and residence with both the adoptive parents when the family unit consists of two adoptive parents. This is the statutory construction of the phrase "adoptive parent or parents" urged by the Service here. Judge Cashin of this Court, however, reversed the administrative determination, holding that the Congressional purpose, which was to restore bona fide family relationships, could be implemented only by interpreting the statute as permitting residence with the noncitizen adoptive parent alone to suffice. Thus, the phrase "adopting parent or parents" was read, as petitioner would have the Court read the similar phrase here, to mean either parent or both, when there are two adoptive parents.

The Ng Fun Yin case, of course, involved the immigration rather than naturalization of an adopted alien child, and in the former situation there is a strong policy in favor of preserving the physical integrity of the family unit. It is also true that the same phrase used in different sections of a complex act does not necessarily carry the same meaning in each context. See Folker v. Johnson, 230 F.2d 906, 908 (2 Cir. 1956). However, the policy in favor of facilitating entry of alien children adopted by American citizens is related to the policy of Section 323(a) to expedite the naturalization of such children. See Hearings on H.R. 9980, supra note 12, at 93. A uniform interpretation of the similar language of the two sections of the Act is to be preferred, particularly when the underlying purpose of Section 323(a) to eliminate the disparity of treatment of adopted and natural children will thereby be implemented.[26]

21. See note 1 supra.

22. Act of September 11, 1957, § 2, 71 Stat. 639, 8 U.S.C. § 1101(b) (1) (E) (Supp. 1962).

23. See Section 205 of the Act of 1952, 66 Stat. 180, as amended, 75 Stat. 650, 654

(1961), 8 U.S.C. § 1155(b, c) (Supp. 1962).

24. Note 22 supra.

25. Cited at 187 F.Supp. at 51.

26. In other cases, lower federal courts have liberally interpreted Section 322 and

Interpreting Section 323(a) to permit the naturalization of an adopted child on the petition of one citizen parent, notwithstanding the alien status of the other parent, is also in accord with the prevailing legal treatment of adopted children and the opinion of sociologists and those engaged in the domestic relations aspect of social work, which "is wholly in the direction of placing the adopted child in the family of his adoption as completely as though the relationship from the beginning had been by blood." Carpenter v. United States, 168 F.2d 369, 372 (3 Cir. 1948) and authorities cited therein; accord, Woodward v. United States, 341 U.S. 112, 71 S.Ct. 605, 95 L.Ed. 648 (1951). A study conducted by the International Union for Child Welfare on the practices and procedures relating to the adoption of children contains the following pertinent observation:

> "In the experience of agencies, the fact that a child may, for years, have a different citizenship from that of his adopter may be a source of great difficulty. * * * and [is] an unfortunate indication to him that he has not the status of a child born in a family. It has also troublesome practical consequences, which may be in their turn provocative of anxiety in the child and the adoptive parents." [27]

U. N. Dep't of Social Affairs, Study on Adoption of Children 90–91 (U.N. Pub. Sales No. 1953.IV.19). See also Child Welfare League of America, Inc., Standards for Adoption Service 68 (1958).

Finally, it should be pointed out that the Service is urging a construction of Section 323(a) that, if accepted, would pose additional problems. The Service argues that the Section requires not only that both parents be citizens, but also that both join in the petition for naturalization of their adopted child.[28] What, then, would be the treatment accorded an adopted child both of whose adoptive parents are United States citizens, but one of whom will not or cannot join in the petition because of separation, abandonment, divorce, or death? While these situations are not before the Court, they exhibit graphically some of the hardships that the Service's rigid reading of the statute would impose upon adopted children,[29] and which *pro tanto* would defeat the legislative policy.

Thus, the legislative history of Section 323(a), related provisions of the Act enacted contemporaneously with Section 323(a), subsequent amendments thereto, and policy considerations all point to the conclusion that a petition for naturalization of an adopted child by one citizen parent is sufficient even though the other adoptive parent is not a citizen.

Notwithstanding the foregoing, the Service argues that (1) rejection of its construction of the statute renders the words "or parents" superfluous in the phrase "the adoptive parent or parents" and (2) the language in question has

other language in Section 323 so that the privilege of naturalization might be bestowed upon those children not having the normal status within a family. In re Petition for Naturalization of Glover, 207 F.Supp. 841 (E.D.La.1962) (construing the word "adoption" in Section 323(a)(3)); In re Howard's Petition, 147 F. Supp. 676 (W.D.Mo.1956) (construing the word "child" in Section 322 to include an illegitimate child); Petition of Sadin, 100 F.Supp. 14 (S.D.N.Y.1951) (same under predecessor of Section 322).

27. The psychological problem is particularly acute when a citizen and alien spouse have a child born abroad and also adopt a child. Were the position of the Service to prevail, the natural child could become a citizen upon the petition of the citizen parent under Section 322, but the adopted child would have to remain an alien until such time as he could file a petition in his own behalf.

28. Government's Reply Memorandum, p. 2.

29. Cf. Petition of Sadin, 100 F.Supp. 14 (S.D.N.Y.1951) (illegitimate child entitled to naturalization under predecessor of Section 322, which read "one of whose parents" is a citizen, notwithstanding that an illegitimate child, having no lawful father, has only one parent).

been "consistently" interpreted by the Service as requiring two citizen parents *to join in the petition and such interpretation must be given "considerable weight."* [30]

■■ As to the Service's first argument, it is not true that the words "or parents" *add nothing* to Section 323(a), if the Section is construed to require a petition by only one parent. If the Section stated that an adopted child may be naturalized upon the petition of "the adoptive parent" (leaving out "or parents"), the Section might be construed as not applying to situations in which there are two adoptive parents. Therefore, the additional words, "or parents," though not as precise as might be wished,[31] do serve a clarifying function and are not superfluous.[32] Moreover, it is noteworthy that the Service's first argument, if valid, should apply with equal force to Section 322 of the Act, which deals with natural children born outside of the United States. This Section permits the filing of a petition for citizenship of a natural born child "one *or both* of whose parents is * * * a citizen of the United States." (Emphasis added.)[33] Yet, a petition by one of two citizen parents under this Section is clearly proper by the very terms of the statute ("on the petition of *such citizen parent*"), even though this construction, under the Service's approach, makes superfluous the words "or both." Furthermore, in Ng Fun Yin, supra, Judge Cashin gave effect to the policy underlying the statute involved in that case,

although his construction of the phrase "adopting parent or parents" involved the same grammatical objection urged here by the Service. As Mr. Justice Holmes remarked, when statutory language is ambiguous, "the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down." United States v. Whitridge, 197 U.S. 135, 143, 25 S.Ct. 406, 49 L.Ed. 696 (1905).

■ As for the Service's second contention, there is 'little evidence of any well defined administrative interpretation of long standing. The Service cites as an interpretation of the predecessor of Section 323(a) an unreported case decided by the United States District Court for the Southern District of Ohio.[34] There was no opinion in that case, and the order fails to indicate the basis for the Examiner's recommendation to the Court that the petition be denied other than reciting "failure to establish eligibility under Section 316 or [sic] Nationality Act of 1940."[35] Moreover, even if the denial was based on noncitizenship of one of the adoptive parents, it cannot be said that reenactment of a statute implies legislative approval of a prior administrative interpretation of which Congress apparently was not aware. Pacific Power & Light Co. v. Federal Power Comm'n, 184 F.2d 272, 275 (D.C. Cir. 1950).

■■ The only pertinent regulation in the Code of Federal Regulations is no less ambiguous than the statutory text itself.[36] The interpretation urged

---

30. Government's Reply Memorandum, pp. 3–4.

31. See text following note 9, supra.

32. *It should be noted that the predecessor of Section 322 read "one of whose parents" is a citizen of the United States. 54 Stat. 1146 (1940). Congress, presumably for purposes of clarification, changed this language in 1952 to read "one or both of whose parents is * * * a citizen of the United States." (Emphasis added.) 66 Stat. 246.*

33. 66 Stat. 246 (1952), 8 U.S.C. § 1433.

34. Matter of Nino Matteo Camardese, Petition No. 3480 (March 8, 1944).

35. A certified copy of the order has been made a part of this record by consent.

36. Section 322.11 of the Code of Federal Regulations recites that "an application to file a petition for naturalization in behalf of a child under section 322 or 323 of the Immigration and Nationality Act shall be submitted to the Service on Form N–402 * * * by the United States citizen parent or parents *or adoptive parent or parents.*" 8 C.F.R. § 322.11 (1958). (Emphasis added.) See

by the Service is clearly set forth, however, in a pamphlet that it publishes entitled "Special Naturalization Benefits for Veterans; Wives and Husbands of United States Citizens; Children of United States Citizens," dated December 1, 1959,[37] which was referred to by the Naturalization Examiner in his recommendation to this Court.[38] An administrative interpretation, even though not published in the Federal Register,[39] is entitled to some weight,[40] but precisely how much depends upon a variety of factors, including (1) contemporaneity of the interpretation with the enactment of the statute; (2) consistent application of the interpretation over a long period of time; (3) reenactment of the statute by Congress with knowledge of the administrative interpretation; (4) the relative expertise of the agency; and (5) the thoroughness evident in its consideration and the validity of its reasoning.[41] As far as the record indicates, the pamphlet

containing the interpretation was issued about four years ago, and it does not appear, with the possible exception of the unreported case referred to above, that the interpretation ever has been applied prior to this case. Nor is there any evidence of the thoroughness or persuasive reasoning in the Service's interpretation that has been said to weigh in favor of deferring to an agency's conclusions. Interpretations of the Act by the Service and the Justice Department have been repudiated in a number of cases without any discussion of the weight to be accorded the Service's views.[42] Moreover, it would seem that the question in the instant case does not require any expertise that the Service is in a better position to have than the courts.[43] In any event, the Court is not compelled to follow an administrative interpretation that it regards as inconsistent with the legislative purpose of the provision in issue.

also 8 C.F.R. § 322.1 (Supp.1963). It is noteworthy that the administrative regulation contains the same alleged superfluity in the phrase "citizen parent or parents" that the Service urges should not be read into the text of Section 323. A comparison of the wording of this administrative regulation with the language in Section 323, Section 322, and the predecessor of Section 322 (§ 315, 54 Stat. 1146) suggests the complexity in resolving the precise meaning of the ostensibly simple phrase in this case.

37. Form N–18 (Rev. 12–1–59), GPO 958054, p. 15, Question 6 and Answer thereto.

38. Findings of Fact, Conclusions of Law, and Recommendation of Designated Naturalization Examiner, pp. 2–3.

39. The Federal Register Act and the Administrative Procedure Act prescribe sanctions for failure to publish a legislative rule promulgated by an agency, see United States v. Aarons, 310 F.2d 341 (2 Cir. 1962), but are silent as to the effect of nonpublication of an interpretative rule. See 49 Stat. 501 (1935), as amended 44 U.S.C. §§ 305(a), 307 (Supp. 1962); 60 Stat. 238 (1946), 5 U.S.C. § 1002. For a discussion of the distinction between legislative and interpretative

rules, see 1 Davis, Administrative Law Treatise § 5.03 (1958).

40. See Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 417–418, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L. Ed. 124 (1944); Gibson Wine Co. v. Snyder, 194 F.2d 329 (D.C.Cir.1952); Woods v. Benson Hotel Corp., 75 F.Supp. 743 (D.Minn.), aff'd on other grounds, 168 F.2d 694 (8 Cir. 1948). See also Boesche v. Udall, 373 U.S. 472, 83 S.Ct. 1373, 10 L.Ed.2d 491 (1963), affirming 303 F.2d 204 (D.C.Cir.1961).

41. See Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1940). See generally, 1 Davis, Administrative Law Treatise §§ 5.05–5.07 (1958).

42. United States ex rel. Aberasturi v. Cain, 147 F.2d 449, 452 (2 Cir. 1945); Ng Fun Yin v. Esperdy, 187 F.Supp. 51 (S.D. N.Y.1960); In re Howard's Petition, 147 F.Supp. 676 (W.D.Mo.1956); Petition of Sadin, 100 F.Supp. 14 (S.D.N.Y.1951).

43. Cf. Petition of F., 73 F.Supp. 655, 656 (S.D.N.Y.1947), where the Court noted that "[t]he responsibility for admitting aliens to citizenship is lodged in the courts. The work of the examiners is intended to be of assistance to the courts in discharging that responsibility."

Accordingly, the recommendation of the Naturalization Examiner is rejected, and the petitioner's application for naturalization of her adopted son, Kenneth Wong, is granted.

So ordered.