Richard P. MAKOFF and Sidney G. Makoff, as Co-Trustees of the Samuel Makoff Trust No. 101, Plaintiffs and Appellants,

v.

Richard David MAKOFF et al., Defendants and Respondents,

and

John Gibbs Makoff, Defendant and Appellant,

Dolly L. Crooks, Guardian of the Estate of Samuel Bradford Makoff and Collette Makoff, minors, Intervenor and Respondent.

No. 13577.

Supreme Court of Utah.

Nov. 19, 1974.

Bryce E. Roe and Thomas J. Quinlan, Roe & Fowler, Salt Lake City, for plaintiffs and appellants.

Roger D. Sandack, A. Wally Sandack, Salt Lake City, for defendants and respondents.

Albert J. Colton, Fabian & Clendenin, Salt Lake City, for intervenor and respondent.

ELLETT, Justice:

This is an appeal from an adverse ruling of the trial court in granting a summary judgment in favor of the defendants and denying one to the plaintiffs. There is no disputed issue of fact, and since there is merely an issue of law, we need not accord any favored position to the trial court.

On December 10, 1956, one Samuel E. Makoff, Sr., now deceased, created an inter vivos trust by and between himself and his two sons as trustees for the benefit of "the then living issue of each of the following named sons of the Settlor, . . ." to wit: Richard P. Makoff and Samuel E. Makoff, Jr. The plaintiffs are the present trustees of the trust. The defendants Richard David Makoff, John Harvey Makoff, and Robert Evan Makoff are the natural children of Richard P. Makoff by his first wife, and John Gibbs Makoff is the natural son by a prior marriage of Sidney G. Makoff, the present wife of Richard P. Makoff. The problem arises because Richard has legally adopted John Gibbs Makoff.

The parties wish to know whether an adopted child is included within the term "issue" as used in the Indenture of Trust, the pertinent provisions of which are:

3.1 Upon the death of the Settlor, the Trustees shall continue to hold the Trust Estate subject to the following trust uses and purposes:

(a) The entire net income of the Trust Estate shall be divided each year into equal shares as follows: One share for the then living issue of each of the following named sons of the Settlor, which shares the Trustees shall distrib-

ute to such issue upon the principle of representation:

Richard P. Makoff
Samuel E. Makoff, Jr.

(b) Upon the death of the survivor of the above-named sons of the Settlor, the Trustees shall divide the Trust Estate into equal shares as follows: One share for the then living issue of each deceased above-named son of the Settlor, which shares the Trustees shall distribute in accordance with section 3.1(c).

(c) Each share set aside for the issue of a deceased son shall be distributed to such issue upon the principle of representation. . . .

Specifically, we are required to determine if John Gibbs Makoff, the adopted child of Richard P. Makoff, is entitled to a share in the trust as being the issue of his adopting father.

At the time the trust instrument was made, Richard was living with his first wife and their natural children.

■■■ The general rules of construction of written instruments apply to the construction of trust instruments, and those rules require a determination of the intention of the settlor where the creation of the trust is a unilateral matter.[1] However, in case the trust is based on a written instrument, the intention of the settlor must be ascertained from the language thereof, and the court may not go outside of the language in an effort to give effect to what it thinks the intent was. If the language is unambiguous, there is no need for wondering what the true intent may have been, and parol evidence is inadmissible to vary the terms set out.[2] However, in ascertaining the intention of the settlor we may consider the entire instrument aided by the surrounding circumstances existing at the time of creation of the trust.[3]

■■ At the time of the creation of the trust neither of the sons of Samuel E.

---

1. 54 Am.Jur., Trusts, § 17.

2. Ibid.

3. *Dumaine v. Dumaine,* 301 Mass. 214, 16 N.E.2d 625 (1938), 118 A.L.R. 834.

Makoff, Sr., had been divorced, and there was nothing to bring to the attention of the settlor that there might be adopted children brought into either of the families. The use of the word "issue" as being the class which he wished to benefit should be given its then natural meaning.[4]

The definition given in 57 Am.Jur., Wills, § 1378 is as follows:

> The term "issue," according to the almost universal consensus of opinion, includes descendants of every degree and is to be given that meaning in the absence of explanatory context. It may, however, receive from the context in which it is used, read in the light of such extrinsic circumstances as are proper to be considered, the restricted meanings of "children," "grandchildren," "grandchildren whose parents are deceased," and "heirs of the body."

Re Farmers' Loan & Trust Company[5] is similar to the instant matter. There the meaning of the work "issue" was involved. The court said:

> The rule is that, unless some other meaning is given to it by the context, the word "issue" is not confined to children, but includes descendants in any degree. [Citation omitted.] Another meaning will not readily be given if the result would be to divert the gift from the direct line of descent. . . .

■ Some light is thrown on the meaning intended to be given the word "issue" when the settlor provided in section 3.1(c) that the share of the deceased son should be distributed to such issue upon the principle of representation. "Representation" means per stirpes and not per capita, and "per stirpes" means taking or inheriting a share of an estate which the immediate ancestor would have taken had he lived.[6]

4. 54 Am.Jur., Trusts, § 18.

5. 213 N.Y. 168, 107 N.E. 340 (1914), 2 A.L.R. 910, 912.

6. 2 Blackstone Commentaries 217, 517.

In In re Smith's Estate[7] this court held that adopted children could not inherit from the relatives of the adoptive parents.[8]

■ One thing is clear, and that is this: In the year 1956 when the trust was created, the law was well settled that an adoptive child could not inherit from the parents of its adoptive parents. That was the law as Samuel E. Makoff, Sr., undoubtedly understood it, and that is the law that must govern the interpretation of the trust before us now.

The law of inheritance was amended by Chapter 189, Laws of Utah 1971, to provide that in various sections "children shall include adopted children." These amendments have no bearing on the matter before us, for we must ascertain what Samuel E. Makoff, Sr., meant by the word "issue" when he used it in the trust deed on December 10, 1956. We agree with the trial court that he did not intend to include adopted children as beneficiaries of his largess.

The trial court is affirmed, and costs are awarded to the respondents.

CALLISTER, C. J., and HENRIOD and TUCKETT, JJ., concur.

CROCKETT, Justice (dissenting):

To discriminate against the adopted child and deprive him of his share of the intended family trust is in my opinion a grave injustice. It is contrary to the clearly expressed intent of our statutory law; it is inconsistent with the better considered decisional law; and is out of harmony with sound policy considerations for the welfare of the family and society generally.

The clearly expressed intent of our adoption statutes in accordance with the conclusion above stated is set forth in Sec-

7. 7 Utah 2d 405, 326 P.2d 400 (1958).

8. Justice Crockett filed a strong dissent in the case.

tion 78–30–9, U.C.A.1953, which provides that upon the order of adoption:

. . . [T]he child shall thenceforth *be regarded and treated in all respects* as the child of the person adopting.

And the succeeding Section 10 states that:

. . . After adoption the two shall sustain the legal relation of parent and child, *and have all the rights* . . . of that relation.

For the purpose of carrying out the clear mandate of those statutes, that the adopted child should have all legal rights the same as natural children, including those of inheritance and succession, our 1971 legislature re-enacted Chapter 189, S. L.U.1971. It is entitled "Interests of Adopted Children, An Act Amending Sections 74–1–24, . . . [et seq.] . . . [enumerates all pertinent sections relating to wills and succession] . . . Providing for Adopted Children to Have the Same Rights Under the Inheritance and Succession Laws as Natural Children . . . ." The act then proceeds to re-enact the pertinent sections, adding at each of ten separate sections the provision that, "For the purposes of this section, *issue shall include adopted children,*" with slight variations appropriate to the text of some sections.

It requires but little reflection to see the fallacy in the concept of narrowing the adoption down to simply a contract between the adoptive parents of the child. It is just as erroneous as it would be to say that a *marriage contract is only* between the immediate parties. Whether we want to accept it or not, the immutable fact is that the adoptive proceeding, like the marriage ceremony, affects not only the immediate parties, but the family and all of society.

Coordinate to the foregoing, I can see no reason why a person should not have an absolute and inviolable right to acquire and establish his family in the manner he chooses; and that his child, whether acquired by natural birth or by choice and adoption, should become his child for all intents and purposes, social, legal and otherwise. Even more important, the child himself should have the right to become a member of the family for all purposes, not only in relation to his adoptive parents, but in relation to brothers, sisters and so on to all other relatives, and to society in general. If this is not so, it is easy to see difficulties that may result as to the reciprocal rights and duties within the family and in relation to the public. Contrasted to this, by regarding the adoptive child as a bona fide member of the family for all intents and purposes the same as a natural child, much good would be accomplished and those difficulties eliminated.[1]

The main opinion itself, generously, but inconsistent with its own conclusion, quotes the definition of issue as a generic term.

The term "issue," . . . includes descendants of every degree and is to be given that meaning in the absence of explanatory context.

This view, that the term should be given general meaning unless the contrary is shown is supported by abundant authority.[2] A plethora of cases could be cited, but in order to avoid burdening the page, a few examples are sufficient for my purpose and anyone who desires to further pursue this subject.

In re Heard's Estate,[3] involved construction of a will creating a trust to be paid to the son's lawful issue. As in our case, after the death of the testatrix, the son adopted a child. The court held that *it would be assumed,* in the absence of any indication to the contrary, *that the testatrix intended*

1. To avoid repetition I refer to my dissent in In re Smith's Estate, 7 Utah 2d 405, 326 P.2d 400, footnote 7 of main opinion.

2. The main opinion quotes 57 Am.Jur., Wills, Sec. 1378 which see for numerous supporting cases; and see also Annotation, adopted child as within class in testamentary gift, 82 A.L.R.2d 12.

3. 49 Cal.2d 514, 319 P.2d 637 (1957).

*an adopted child to be included in the term "lawful issue"* in view of the public policy to treat adopted children the same as natural children. It commented that there is no more probability that a person would adopt a child to adversely affect someone else, than that he would deliberately have a blood child for that purpose.

In O'Brien v. Walker [4] the court expressly rejected the contention that the term "issue" when used in a will or trust instrument, meant only "children of the blood" and held that an adopted daughter took as "issue" of the trustor's daughter.

In Dollar Savings & Trust Company of Youngstown v. Musto [5] the court held that a child adopted by the son of the testatrix 16 years after her death (1938) and 17 years after her will was executed (1937) was the son's "issue" within the meaning of the will. The court said:

. . . in modern days, after reading all of the cases submitted and after careful research, *we find that the word "issue" has taken on a much broader meaning and feel that it now, and did at the time the will was drawn, include adopted children.*

In re Holden's Trust [6] the testatrix died in 1926, one year after making her will. She provided for her own adopted son for his life. The question was whether a child adopted by her adopted son 11 years after her death was "lawful issue" of her adopted son. The Minnesota court, upon an exhaustive review of the decisions in this country, *held the adopted child was such lawful issue.*

In summary I think it appropriate and directly to the point to reiterate the words of Judge Goodrich in Carpenter v. United States: [7]

. . . That *the current of modern thought* on the matter is *wholly in the direction of placing the adopted child in the family* of his adoption as *completely* as though the relationship from the beginning had been by blood.

Impelled by what has been said herein, I state with the utmost emphasis my conviction that under the fair and clear interpretation and application of our statutes, and the better considered decisional law on the subject, an adoptive child should be regarded as emancipated to the rights of a natural child in every respect; and that therefore this particular adoptive child should have his fair and lawful share of the trust. (All emphasis added.)

---

4. 35 Hawaii 104 (1939), aff'd 115 F.2d 956 (9th Cir. 1940); and to the same effect see decision of the Supreme Court of the State of Hawaii, In re Estate of Cunha, 49 Hawaii 273, 414 P.2d 925 (1966).

5. 88 Ohio L.Abst. 62, 181 N.E.2d 734 (Ct. App.1961).

6. 207 Minn. 21, 291 N.W. 104 (Sup.Ct. 1940). In the later case of In re Trusteeship Agreement with Nash, 265 Minn. 412, 122 N.W.2d 104 (1963), the court said: ". . . we hold that the settlor is presumed to intend that adopted children be included within the category of issue of a life tenant 'who may hereafter be born,'" unless the contrary is shown. Similar holding in Prince v. Nugent, 93 R.I. 149, 172 A.2d 743 (1961), the court stated that gift to lawful issue in a deed of trust prima facie includes the grantees' adopted child unless otherwise stated.

7. 3 Cir., 168 F.2d 369, 372, 3 A.L.R.2d 841, 889.