2000 Utah Ct. App. 241

**Jeannine PERRENOUD and Linda Jenkins, Plaintiffs and Appellants,**

**v.**

**Lila Ann HARMAN and Lloyd Mitchell, Defendants and Appellees.**

**No. 981721–CA.**

Court of Appeals of Utah.

Aug. 3, 2000.

Scott B. Mitchell, Salt Lake City, for Appellants.

Randall L. Skeen and Todd R. Mecham, Cook, Skeen & Robinson, LLC, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., and DAVIS, and ORME, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Plaintiffs, Jeannine Perrenoud and Linda Jenkins, appeal the trial court's grant of summary judgment in favor of defendants and dismissal of their complaint. Plaintiffs allege Rhoda Thurber converted trust assets for the use of the defendants, two of her natural children, and breached her fiduciary duty as trustee.

## BACKGROUND [1]

¶ 2 Joseph and Rhoda Thurber executed a Declaration of Trust on April 1, 1980 and conveyed a house and various personal property into the trust. The Thurbers listed their children as beneficiaries of the trust—the parties in this action. Plaintiff, Jeannine Perrenoud, is the natural daughter of Joseph Thurber, while plaintiff Linda Jenkins and defendants Lila Ann Harman and Lloyd Mitchell are the natural children of Rhoda Thurber. The Thurbers recorded the trust

and a quit-claim deed for the real property on April 14, 1980.

¶ 3 Mr. Thurber died on August 5, 1992, and pursuant to the trust's provisions, Ms. Thurber became sole trustee of the trust. On August 15, 1992, Ms. Thurber conveyed the real property in the trust to her granddaughter Holli Bezzant and her husband Robert. Holli Bezzant is defendant Harman's daughter. The Bezzants executed a Promissory Note, agreeing to make monthly payments of $612 to Ms. Thurber until the purchase price was paid in full.

¶ 4 On June 29, 1992, Ms. Thurber executed a Last Will and Testament and a second trust that revoked all prior testamentary instruments. Ms. Thurber died on December 22, 1996. Jenkins, Mitchell, and Harman are the heirs of Ms. Thurber's estate named in the petition for probate. Pursuant to Ms. Thurber's will, Harman and Mitchell have received the $612 monthly payments on the Bezzants' promissory note.

¶ 5 Plaintiffs filed their complaint on September 4, 1997 against Harman and Mitchell for illegally exercising dominion and control over the trust res. Plaintiffs filed a motion for partial summary judgment and defendants filed a cross-motion for summary judgment. After a hearing, the trial court granted defendants' cross-motion and dismissed plaintiffs' complaint with prejudice. Plaintiffs filed this timely appeal.

## STANDARD OF REVIEW

¶ 6 Summary judgment under rule 56 is appropriate "only if 'there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law.'" *In re Estate of West,* 948 P.2d 351, 353 (Utah 1997) (alteration in original) (quoting Utah R. Civ. P. 56(c)). "The case as it comes to us therefore presents only issues of law, and we afford no deference but review it for correctness." *Id.*

## ANALYSIS

¶ 7 The issue before us is whether Ms. Thurber had the legal capacity under state

1. The relevant facts are undisputed by the parties.

law or the terms of the trust to convey property out of the trust after the death of Mr. Thurber. Both parties concede that our supreme court's decision in *In re Estate of West*, 948 P.2d 351 (Utah 1997), is controlling. Not surprisingly, the parties differ in their reading of *West*, each claiming it clearly supports their position. Defendants claim that *West* is directly on point and supports the trial court's grant of summary judgment in their favor. Plaintiffs contend that *West* is distinguishable because certain provisions of the Thurber trust are different than the West trust. Specifically, plaintiffs point out two differences to demonstrate the trial court erred in granting summary judgment: (1) in the Thurber trust, the phrase "upon the death of the survivor of us" comes after the beneficiaries are listed, rather than before the beneficiaries are listed as in the West trust; and (2) the Thurber trust contains an addendum which states, "[i]f one of the above listed should be deceased, the beneficiaries cannot be changed."

¶ 8 Analyzing the trust in *West*, the supreme court found three questions determinative; we find them equally applicable to this case and address them accordingly: (1) did the trust authorize the trustees to revoke the trust by selling or encumbering the trust res; (2) upon the death of one of the settlors, did the other become sole trustee and succeed to all the powers which previously belonged to them as joint trustees; and (3) did the surviving settlor, as sole trustee, owe the listed beneficiaries a fiduciary duty to manage the trust for their benefit. *See id.* at 353–54.

¶ 9 Paragraph 3 of the Thurber trust is identical to paragraph 5 of the trust in *West* and states:

> We reserve unto ourselves the power and right at any time during our lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary. *The sale or other disposition by us of the whole or any part of the property held*

> *hereunder shall constitute as to such whole or part a revocation of this trust.*

*Id.* at 354. The supreme court determined that the first sentence allowed the settlors to amend or revoke the trust. The second sentence, which is critical in both cases, empowered the trustees to sell or dispose of property owned by the trust because title to the property was in the trustees. *See id.* The court stated that while "it is not clear that the surviving *settlor* may revoke the trust, the surviving *trustee* clearly may work a revocation by selling or disposing of the property." *Id.* Thus, the trust provides two ways of revoking the trust—the settlors may jointly do so, or the trustees, acting jointly or as the surviving trustee, may do so.[2]

¶ 10 Next, the supreme court addressed whether the surviving trustee succeeded to all the powers previously belonging to the joint trustees. Under the Utah Uniform Probate Code, "[i]f two or more trustees are appointed to perform a trust, and if any of them ... having accepted, ceases to be a trustee, the surviving or remaining trustees shall perform the trust and succeed to all the powers, duties, and discretionary authority given to the trustees jointly." Utah Code Ann. § 75-7-405(2) (1993). The trust in *West* contained a similar provision which stated: "In the event of the physical or mental incapacity or death of one of us, the survivor shall continue as sole Trustee." *West*, 948 P.2d at 354. Based on these two provisions, the supreme court concluded that "any rights given to [the] co-trustees could be exercised by the survivor of them as sole trustee." *Id.*

¶ 11 Plaintiffs argue that *West* is distinguishable because the Thurber trust limits the power of the surviving trustee. Both trusts provide that the surviving trustee "shall continue as sole trustee upon the death or incapacity of the other." In *West*, the court specifically noted that the use of the plural pronoun "us" did not limit the surviving trustee's power: "Otherwise, a sole trustee would have less power than the joint trustees held. That would be illogical, as *nothing in the trust instrument denies to a*

---

**2.** In their brief, plaintiffs concede the trust is revocable and state that "only the second and third of the questions posed by the *West* court are at issue in the case at bar."

*sole trustee any of the powers possessed by the joint trustees." Id.* (emphasis added). An addendum to the Thurber trust states: "If one of the above listed should be deceased the beneficiaries cannot be changed." Plaintiffs argue this restriction of the surviving trustee's power distinguishes it from *West* because the trust in *West* contained no similar provision. Plaintiffs further maintain that they and the other named beneficiaries became present rather than contingent beneficiaries upon execution of the trust, pursuant to the addendum language. Thus, according to plaintiffs, the addendum caused the trust to become irrevocable upon the death of one of the trustees. We do not agree.

■ ¶ 12 Like the trust in *West,* the Thurber trust is a revocable trust set up for the use of the trustees during their lifetimes with any remaining assets to be passed on to the named beneficiaries after the deaths of both settlors. While plaintiffs are correct that the addendum is a limitation on the surviving settlor's power, the limitation is not as far reaching as plaintiffs would have us believe.

¶ 13 Reading the addendum as plaintiffs suggest would render other provisions of the trust superfluous. Plaintiffs cite *Makoff v. Makoff,* 528 P.2d 797 (Utah 1974), for the proposition that the intent of the settlors must be given effect when construing a trust. However, *Makoff* cuts against plaintiffs' argument as much as it helps it:

> The general rules of construction of written instruments apply to the construction of trust instruments, and those rules require a determination of the intention of the settlor where the creation of the trust is a unilateral matter. However, in case the trust is based on a written instrument, the intention of the settlor must be ascertained from the language thereof, and the court may not go outside of the language in an effort to give effect to what it thinks

the intent was. If the language is unambiguous, there is no need for wondering what the true intent may have been, and parol evidence is inadmissible to vary the terms set out. However, in ascertaining the intention of the settlor we may consider the entire instrument aided by the surrounding circumstances existing at the time of creation of the trust.

528 P.2d at 798 (footnotes omitted). Thus, these rules of construction require us to consider the "entire instrument" in determining the effect of the addendum.[3]

■ ¶ 14 As in *West,* the Thurber trust contains express provisions giving the surviving trustee the power to revoke the trust. For example, the trust states in paragraph five: "Upon the death or legal incapacity of one of us, the survivor shall continue as Sole Trustee." Furthermore, paragraphs two and three reserve the right to encumber or sell trust assets using the language "[w]e reserve unto ourselves the power and right." As noted previously, the reference to the trustees using the plural "us" does not limit the power to only the joint trustees, but rather applies to the joint trustees or the sole surviving trustee. *See West,* 948 P.2d at 354. On this issue, the *West* court concluded:

> It defies common sense that a couple creating a revocable inter vivos trust naming themselves as trustees would deliberately preclude themselves from fully utilizing the property for their own benefit while both or either one of them was alive, particularly when it appears that the purpose of this form-book trust document may have been simply to avoid probate.

*Id.* Thus, the only way the addendum can be read in harmony with the rest of the trust is that it only limited the survivor in his or her capacity as a settlor from changing the beneficiaries. In other words, as the surviving trustee, Ms. Thurber could not change the

**3.** While plaintiffs argue that Mr. Thurber did not intend to allow Ms. Thurber to deny his daughter a share of any remaining trust assets, it is equally clear that Mr. Thurber *did intend* to create an inter vivos revocable trust for the use and benefit of himself and his wife during their respective lifetimes. This court is unable to rewrite the trust to make it into something which it is not, i.e., an irrevocable trust. *Cf. Provo City Corp. v.*

*Nielson Scott Co., Inc.,* 603 P.2d 803, 806 (Utah 1979) (holding "court will not rewrite an unambiguous contract"); *Dalton v. Jerico Constr. Co.,* 642 P.2d 748, 750 (Utah 1982) (holding court will not rewrite contract on basis of equitable principles). We are bound to interpret the language the parties used, and to give effect to all provisions contained in the instrument. *See Makoff,* 528 P.2d at 798.

beneficiaries, but she retained the power to sell and encumber trust assets during her lifetime.[4]

¶ 15 In *West*, the supreme court determined that the surviving trustee of the revocable inter vivos trust was also the sole present beneficiary of the trust. *See id.* at 355. The court found that the trust was established initially for the benefit of the settlors/trustees. *See id.* The trust in *West* contained a provision allowing the trustees to collect rent or income from the trust property for their exclusive benefit. *See id.* Additionally, the trust in *West* stated that the property was held in trust for the beneficiaries "on the date of *death of the survivor of us*." *Id.* at 355–56. Thus, the court determined that the listed beneficiaries' "vested rights are subject to divestiture and will not ripen until the death of the surviving settlor." *Id.* at 356. In *West*, the surviving trustee conveyed the real property out of the trust for his own use and benefit. The court concluded that the trustee

> could sell or dispose of the property as he saw fit. This involved no breach of his fiduciary duty since he was at that point the sole beneficiary. Because his conveyance of the property out of the trust as the sole trustee worked a termination of the trust ..., no trust existed at his death, and the children's contingent interest in the terminated trust avails them nothing.

*Id.*

¶ 16 Like the trust in *West*, the Thurber trust has a provision allowing the trustees to collect rent and income from trust property. Additionally, the provision allowing the trustees to amend or revoke the trust states that the trustees need not obtain "the consent of

any beneficiary." Finally, the Thurber trust also has the identical "[u]pon the death of the survivor of us" provision.

¶ 17 Plaintiffs argue that the Thurber trust is distinguishable because the "upon the death of the survivor" language comes after the beneficiaries are listed, rather than before it as in the *West* trust. Thus, plaintiffs argue that the beneficiaries became vested present beneficiaries on the date the trust was executed, April 1, 1980, and the joint trustees would have owed the beneficiaries a fiduciary duty to manage the trust for their benefit while both Mr. and Ms. Thurber were alive. In other words, the joint trustees would have needed the consent of the beneficiaries to revoke the trust during their lifetime. As pointed out earlier, however, paragraph three of the trust expressly states that the trustees do not need to obtain the consent of the beneficiaries, nor are they required to give the beneficiaries notice of any revocation or amendment. Plaintiffs' reading of the trust is at odds with the clear language of the trust. The major provisions of the trust establish that it was designed to be an inter vivos revocable trust for the benefit of the trustees during their lifetimes. *See id.* at 355.

¶ 18 As such, the listed beneficiaries were only contingent beneficiaries subject to divestiture. Because the children were not present beneficiaries, Ms. Thurber owed them no fiduciary duty to manage the trust for their benefit. Accordingly, Ms. Thurber was entitled to convey the house to the Bezzants.[5] Because her conveyance of the house removed it from the trust, the income Ms. Thurber received was properly

---

4. We respectfully disagree with our dissenting colleague that the trust allows Ms. Thurber to use the trust res "as she pleased ... provided she did not disadvantage or prefer one contingent beneficiary over another." The result of such a conclusion is that the surviving trustee's duties are impossibly unclear. It is evident under *West* that once Ms. Thurber disposes of trust assets she has permissibly revoked the trust. The theory espoused in the dissent, however, would result in a trust that is only partially revocable by the surviving trustee, contrary to *West*, which rejected that view by reversing this court's original opinion in the *West* case. *See West*, 948 P.2d at 356, *rev'g In re Estate of West*, 915 P.2d 504, 507

(Utah Ct.App.1996) (holding surviving trustee could not unilaterally revoke trust and had fiduciary duty to manage trust for benefit of designated beneficiaries).

5. The trust contained an additional addendum which stated: "If the home is sold the money is to be put into a trust, designated 'The Thurber Trust', to be drawn out at 20 per cent Per Year." Plaintiffs fail to even refer to this provision, let alone argue how it should be interpreted. We therefore do not address it, although the dissent refers to it as bolstering the theory Ms. Thurber could not act as she did.

distributed according to her will, rather than to the trust beneficiaries.[6]

## CONCLUSION

¶ 19 Under *West*, the Thurber trust is a revocable inter vivos trust. As such, Ms. Thurber, as sole surviving trustee and sole present beneficiary, was entitled to convey or encumber the trust assets in whatever manner she desired. Plaintiffs' reading of the trust document is at odds with our supreme court's decision in *West* and with the plain meaning of the trust itself, and is therefore unavailing.

¶ 20 Accordingly, the trial court's grant of summary judgment is affirmed.

¶ 21 I CONCUR: JAMES Z. DAVIS, Judge.

ORME, Judge (dissenting):

¶ 22 If the settlors of the trust had simply signed the preprinted form they started out with, I would have no problem with the majority opinion. However, in this case the settlors specially added to the preprinted form several new provisions in an effort to set out their own unique intent in creating the trust. These typewritten additions are the essence of the intended trust arrangement and, when inconsistent, supercede the preprinted provisions. *Cf. Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88, 90 (Utah 1988) ("If a printed form is modified by inserted words in writing or otherwise, the inserted words 'take precedence over the printed matter.'") (citation omitted). When taken in conjunction with the rest of the document, they set out quite clearly the intent of the settlors

when they created the trust. Two of the added provisions state:

> If the home is sold the money is to be put into a trust, designated "the Thurber Trust", to be drawn out at 20 [percent] per year.

> If one of the above listed [i.e., Mr. or Mrs. Thurber] should be deceased, the beneficiaries cannot be changed.

¶ 23 Considering the entire instrument, with appropriate emphasis on the provisions specially added by the Thurbers, their intent is apparent. *See Makoff v. Makoff*, 528 P.2d 797, 798 (Utah 1974) ("[I]n ascertaining the intention of the settlor we may consider the entire instrument aided by the surrounding circumstances existing at the time of creation of the trust."). As the trial court aptly observed, "the parties wanted to set up a trust that would not be changed after one died. I mean, I read that as the intent of the language where it says, 'If one of the above listed should be deceased, the beneficiaries cannot be changed.'" That intent is manifest, and I cannot imagine that the settlors intended to countenance the kind of legerdemain sought to be perpetrated here, whereby wearing her settlor's hat the surviving Mrs. Thurber could not write any of the children out of the trust, but by putting on her trustee's hat she was entirely free to transfer trust assets to some children at the exclusion of others. I assume it would be no comfort to Mr. Thurber that his widow subverted their mutual intent acting as a trustee rather than as a settlor.[1]

¶ 24 The conclusion reached by the majority opinion is premised on *In re Estate of West*, 948 P.2d 351 (Utah 1997), where the same or a similar form, *unchanged by the*

---

6. We also observe that footnote three of the dissent theorizes that if Zions Bank had been named as trustee it could not, upon Ms. Thurber's death, distribute the trust res to only two of the children. *We agree.* But that is not what happened in this case. Ms. Thurber removed the house from the trust during her lifetime, as she was allowed to do as sole surviving trustee. As such, the trust beneficiaries had no claim to the house because it was no longer part of the trust res when Ms. Thurber died. Even if we do not like the result, it is mandated by *West's* holding that named beneficiaries of a revocable trust are entitled to receive trust proceeds only if they survive

both settlors and only if the assets remain in the trust. *See West*, 948 P.2d at 355–56.

---

1. Contrary to the majority's assertion in footnote 3 of the main opinion that it would be rewriting the trust, making it an irrevocable one, if it were to refuse Mrs. Thurber the right to deny two of the children a share of any remaining trust asset, the reality is that such a refusal would fulfill the settlors' original intent rather than alter it. Their intention was that the trust be regarded as revocable to benefit the surviving settlor, but not to benefit one of the children over the others.

*settlors,* was in issue. *See id.* at 354. *West* held that any surviving trustee " 'succeed[s] to all the powers, duties, and discretionary authority given to the trustees jointly.' " *Id.* (quoting Utah Code Ann. § 75–7–405(2) (1993)). The majority's reliance on *West* is misplaced for two reasons. First, *West* deals only with the retained powers of a surviving trustee—not the powers of a surviving settlor who created the trust jointly with another, for particular purposes, and must remain true to the intent of that instrument.[2]

¶ 25 Second, as recognized in *West,* a surviving trustee's powers, duties, and discretionary authority *are* limited if something "in the trust instrument denies to a sole trustee any of the powers possessed by the joint trustees." *Id.* The settlors in this case, agreeing while they were both alive to treat all of their children equally, did intend to significantly limit the survivor's prerogatives with their added language, clearly distinguishing our situation from the facts in *West,* where the preprinted form was not altered.

¶ 26 The trust instrument was intended to accomplish three things: first, to create a trust in order to avoid probate; second, to set it up in a way that the trust assets were fully accessible to the settlors during their lifetimes; and third, to ensure that after the death of one of the settlors, their four children would share equally in the assets of the trust by restricting the survivor from benefiting one child at the expense of another. I believe this third purpose is only heightened in the case of the primary trust asset, the residence, in view of the added provision specially restricting the dissipation of proceeds from the home's sale.

¶ 27 Mrs. Thurber went awry in her duty in two respects. First, the trust instrument required that if the house was to be sold, which occurrence is the cause of the present dispute, "the money is to be put into ["the Thurber Trust"]." This never occurred. Second, the provision that the beneficiaries not be changed after the death of either settlor made it apparent that the intent of the Thurbers was to ensure that all the children were to benefit equally from the home or its proceeds. Instead, Mrs. Thurber benefited her "favorites" at the expense of the other children.

¶ 28 Upon Mr. Thurber's death, Mrs. Thurber retained the power, as trustee, to deal as she pleased with the res of the trust, so long as she did not disadvantage or prefer one contingent beneficiary over another. Because Mrs. Thurber sold the house in a manner and to a purpose inconsistent with the terms of the trust instrument, she violated her duty as a trustee.[3] Because the Thurbers' mutual intent as expressed in the trust instrument should be given effect, I would reverse the summary judgment in favor of defendants and remand with instructions to grant plaintiffs' motion for partial summary judgment.

2. Mrs. Thurber cannot, as a trustee, take an action that would be at odds with what she is obligated to do as a surviving joint settlor. While the parties have analyzed this case in terms of Mrs. Thurber repeatedly changing hats from trustee to settlor to beneficiary, a trustee who is also a settlor and a beneficiary actually has the difficult challenge of wearing all three hats at once, and is not at liberty to selectively remove one or the other to accomplish a personal objective contrary to the intent of the trust instrument.

3. Vision in this case is clouded by Mrs. Thurber's various roles as trustee, beneficiary, and settlor. To simplify the analysis, let us assume that Mr. and Mrs. Thurber, instead of designating themselves as trustees, designated the trust department of Zions Bank as trustee. Zions Bank would have the ability, as trustee, to sell the home during Mrs. Thurber's lifetime. Suppose for example, she had chosen to enter a retirement home and needed the proceeds from the sale of her home to pay her rent, or simply wished to travel around the world. It would be completely appropriate for Zions to sell the home on contract, as Mrs. Thurber did here, to facilitate her goals. As here, Mrs. Thurber would have the exclusive benefit of the monthly income during her life. But would Zions, as trustee, be allowed on Mrs. Thurber's death to distribute the remaining proceeds from the home only to two children, excluding the other two as Mrs. Thurber did? Absolutely not. Such action would work a de facto change in beneficiaries, contrary to the language of the trust.

Mrs. Thurber, *as trustee,* would be under the same obligation that Zions would be. Her additional roles as beneficiary and settlor should not change that.